KENNETH S. GAINES, ESQ. SBN 049045
ken@gaineslawfirm.com
DANIEL F. GAINES, ESQ. SBN 251488
daniel@gaineslawfirm.com
ALEX P. KATOFSKY, ESQ. SBN 202754
alex@gaineslawfirm.com
**GAINES & GAINES, APLC**
21550 Oxnard Street, Suite 980
Woodland Hills, CA 91367
Telephone: (818) 703-8985
Facsimile: (818) 703-8984

Attorneys for Plaintiff Sean Skuro
and Proposed Class Counsel

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| SEAN SKURO, on behalf of himself and all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware limited liability company, ATX Group, Inc., a Texas corporation, and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.: CV 10-8672-GW (FFMx)<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**DATE: February 23, 2012**<br>**TIME: 8:30 A.M.**<br>**COURTROOM: 10**<br>**JUDGE: Hon. George H. Wu** |

**TO THE COURT AND TO ALL PARTIES:**

PLEASE TAKE NOTICE that on February 23, 2012 at 8:30 a.m., in Courtroom 10 of the above-entitled Court, located at 312 N. Spring Street, Los Angeles, California 90012, Plaintiff Sean Skuro will, and hereby does, move this Court for an order granting preliminary approval of a proposed class action settlement. The terms of the settlement are contained within the Settlement Agreement and Release between Plaintiff and Defendants ("Stipulation of Settlement") filed herewith. This motion is unopposed by Defendants.

This motion will be based on this Notice and accompanying Memorandum of Points and Authorities, the Declarations of Kenneth S. Gaines, Daniel F. Gaines, and Alex P. Katofsky, the Stipulation of Settlement (including exhibits), all filed herewith, and on such further evidence and argument as may be presented at the hearing.

Dated: January 24, 2012

Respectfully Submitted,

GAINES & GAINES, APLC

By: /s/

Kenneth S. Gaines, Esq.
Daniel F. Gaines, Esq.
Alex P. Katofsky, Esq.
Attorneys for Plaintiff Sean Skuro and Proposed Class Counsel

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 3

III. SUMMARY OF SETTLEMENT TERMS .......... 6

A. The Settlement Class .......... 6

B. Settlement Consideration .......... 6

1. Cash Benefit to Class Members who Submit a Claim .......... 6

2. Non-Cash Benefit to Class Members Who Do Not Submit a Claim .......... 7

3. Non-Monetary Relief .......... 7

4. Payment of Claims Administration Expenses .......... 8

5. Service Payment to the Class Representative .......... 8

6. Attorneys' Fees and Costs to Class Counsel .......... 8

C. The Release by Plaintiff and Class Members .......... 9

IV. PRELIMINARY SETTLEMENT APPROVAL PROCESS .......... 9

A. Provisional Certification of the Settlement Class .......... 11

B. Settlement Administration Timeline .......... 11

V. PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE .......... 12

A. The Terms of the Proposed Settlement Provide Reasonable Compensation for Plaintiff's and Class Members' Damages .......... 14

B. The Settlement is the Product of Serious, Arm's-Length, Informed Negotiations and There are no Indications Present to Doubt its Fairness .......... 18

VI. PROVISIONAL CLASS CERTIFICATION IS APPROPRIATE .......... 19

A. FRCP 23(a) Requirements For Class Certification Are Met .......... 19

1. Numerosity .......... 20

2. Commonality .......... 20

3. Typicality .......... 20

**TABLE OF CONTENTS**
**(continued)**


4. Adequacy of Representation ........................................ 21

B. FRCP 23(b)(3) Requirements for Class Certification are Met ............ 22

1. Predominance ........................................ 22

2. Superiority ........................................ 23

VII. THE PROPOSED CLASS NOTICE IS APPROPRIATE ........................................ 23

A. The Class Notice Satisfies Due Process ........................................ 23

B. The Proposed Notice is Accurate and Informative ........................................ 24

VIII. A FINAL APPROVAL HEARING SHOULD BE SCHEDULED ........................................ 25

IX. CONCLUSION ........................................ 25

# TABLE OF AUTHORITIES

## Federal Statutes

28 U.S.C. § 1441(b) .......... 3

Fed. R. Civ. P. 23 .......... *passim*

## California Statutes

California Civil Code section 1542 .......... 9

California Penal Code, section 630 *et seq.* .......... 1, 3, 7, 15

California Penal Code section 637.2 .......... 3, 14

## Federal Cases

*AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011) .......... 15

*Acosta v. Trans Union LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) .......... 12

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......... 22

*Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) .......... 16

*Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268 (9th Cir. 1992) .......... 10

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) .......... 18

*Cox v. American Cast Iron Pipe*, 784 F.2d 1546 (11th Cir. 1986) .......... 20, 22

*Hanlon v. Chrysler Corp.*, 150 F. 3d 1011 (9th Cir. 1998) .......... *passim*

**TABLE OF AUTHORITIES**
(continued)

*Gen. Tel. Co. of the SW v. Falcon*,
12 S.Ct. 2364, 457 U.S. 147 (1982) ........ 21

*Griffin v. Carlin*,
755 F.2d 1516 (11th Cir. 1985) ........ 21

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ........ 14

*In re Prudential Securities, Inc.*,
163 F.R.D. 200 (S.D.N.Y. 1995) ........ 12

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........ 10

*In re Traffic Exec. Ass'n*,
627 F.2d 631 (2d Cir. 1980) ........ 12

*Kline v. Coldwell, Banker & Co.*,
508 F.2d 226 (9th Cir. 1974) ........ 16

*Martens v. Smith Barney*,
181 F.R.D. 243 (S.D.N.Y. 1998) ........ 18

*Molski v. Gleich*,
318 F.3d 937 (9th Cir. 2003) ........ 19

*Najarian v. Avis Rent a Car Sys.*,
No. CV 07-0588, 2007 U.S. Dist. LEXIS 59932 (C.D. Cal. June 13, 2007).. 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ........ 10

*Officers for Justice v. Civ. Serv. Comm'n of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ........ 18

*Ratner v. Chemical Bank NY Trust Co.*,
54 F.R.D. 412 (S.D.N.Y. 1972) ........ 16

## TABLE OF AUTHORITIES
(continued)

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
157 F. Supp. 2d 561 (E.D. Pa. 2001)....................10

*Soualian v. Int'l Coffee & Tea LLC*,
No. CV 07-0502, 2007 US. Dist. LEXIS 44208 (C.D. Cal June 11, 2007)....16

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp*.,
130 S.Ct. 1758 (2010) ....................15

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ....................12, 13

*Van Bronkhorst v. Safeco Corp*.,
529 F.2d 943 (9th Cir. 1976) ....................12

*Welmer v. Syntex*,
117 F.R.D. 641 (N.D. Cal. 1987) ....................21

*Yamamoto v. Omiya*,
564 F.2d 1319 (9th Cir. 1977) ....................12

### California Cases

*Kearney v. Solomon Smith Barney*,
(2006) 39 Cal 4th 95 ....................16

### Treatises

2 Alba Conte & Herbert B. Newberg,
*Newberg on Class Actions*, § 8.21 (2d ed. 1985) ....................25

2 Alba Conte & Herbert B. Newberg,
*Newberg on Class Actions*, § 8.39 (2d ed. 1985) ....................24, 25

4 Alba Conte & Herbert B. Newberg,
*Newberg on Class Actions*, § 11.22 (4th ed. 2002) ....................10, 11

4 Alba Conte & Herbert B. Newberg,
*Newberg on Class Actions*, § 11.25 (4th ed. 2002) ....................10, 11, 12

**TABLE OF AUTHORITIES**
(continued)

4 Alba Conte & Herbert B. Newberg,
*Newberg on Class Actions*, § 11.26 (4th ed. 2002) .................................. 11, 19

4 Alba Conte & Herbert B. Newberg,
*Newberg on Class Actions*, § 11.41 (4th ed. 2002) .................................. 12, 13

Manual for Complex Litigation (Third) § 30.41 (1995) .................................. 10, 11

Manual for Complex Litigation (Third) § 30.211 (1995) .................................. 24, 25

Manual for Complex Litigation (Third) § 30.212 (1995) .................................. 24, 25

Manual for Complex Litigation (Fourth) § 21.62 (2004) .................................. 9

## I. INTRODUCTION

The parties to this action are pleased to report that they have reached a fair, reasonable, and arm's length agreement to settle this matter. The settlement provides real, valuable relief to more than 40,000 California consumers. Plaintiff Sean Skuro ("Plaintiff" or "Skuro") on behalf of himself and others similarly situated, and Defendants BMW of North America, LLC ("BMW") and ATX Group, Inc.[1] ("ATX") (BMW and ATX are referred to collectively as "Defendants"; Plaintiff, BMW, and ATX as the "Parties") seek preliminary approval of their proposed class action settlement.

Plaintiff brought this action against Defendants after learning that nearly all telephone calls placed to the BMW Assist, a subscription-based service offered as a safety and convenience option in many BMW vehicles and administered by ATX, are recorded for quality assurance purposes. Plaintiff alleges that prior to this lawsuit, Defendants provided no contemporaneous verbal disclosure to users that their calls with the BMW Assist service would be recorded, which Plaintiff contends violates *Cal. Penal Code* § 630 *et. seq.* For their part, Defendants contend that, among other things, the BMW Assist subscription agreement and website have at all relevant times provided appropriate notice and pre-authorization of potential call recording and now include on calls to BMW Assist a pre-recorded notice that calls may be recorded or monitored.

As a result of this settlement, Defendants have agreed that the practice at the heart of this litigation—the recording of calls without what Plaintiff contends are appropriate contemporaneous verbal disclosures—will cease. Subject to future changes in law, Defendants shall provide verbal disclosure to all California BMW Assist users prior to recording their calls.

---

[1] ATX is now known as Agero Connected Services, Inc.

Although the Parties understand that no class member, including Plaintiff, has suffered any actual damages from the violations alleged, the compromise provides the settlement class members with the following choice of relief: (1) a cash payment not to exceed $50 from a non-reversionary common fund to be established by Defendants, with any unclaimed portion to be paid to Big Brother/Big Sister of America , subject to the approval of the Court in connection with the final approval process. ; or (2) an extension or upgrade of a class member's existing BMW Assist service, valued at approximately $100. ***Every*** settlement class member who does not opt out of this settlement, if finally approved, will receive one of these two benefits, at the member's option. The value of the settlement consideration, including attorneys' fees and costs and administration expenses to be paid separately by Defendants, exceeds $5,000,000.

This proposed settlement[2] resolves all of the Named Plaintiffs' and settlement class members' claims against BMW and ATX, and satisfies all of the criteria for preliminary settlement approval under Federal law, and is fair, reasonable, and adequate. Accordingly, the Parties request that the Court:

1. Provisionally certify the proposed settlement class for settlement purposes,
2. Grant preliminary approval of the proposed Settlement;
3. Approve the proposed notice program and the forms proposed by the parties (collectively the "Settlement Documents");
4. Confirm the appointment of Plaintiff Sean Skuro as Class Representative;
5. Confirm the appointment of Kenneth S. Gaines, Daniel F. Gaines, and Alex P. Katofsky of Gaines & Gaines, APLC as Settlement Class Counsel;
6. Confirm the appointment of either Gilardi & Co, LLC or Kurtzman Carson Consultants LLC as settlement administrator (to be decided by the time of

[2] The Parties' Stipulation of Settlement is attached to the Declaration of Daniel F. Gaines, submitted herewith, as Exhibit "A."

the preliminary approval hearing by Defendants, and with Defendants reserving the right to name a new administrator subject to Court approval);

7. Set deadlines for mailing Settlement Documents and for submitting a claim, opting out or objecting to the settlement; and

8. Schedule a final approval hearing.

## II. FACTUAL BACKGROUND

On October 13, 2010, Plaintiff filed a Class Action Complaint against BMW and Doe defendants in the Los Angeles Superior Court, which BMW removed to the United States District Court for the Central District of California pursuant to the Class Action Fairness Act, 28 U.S.C. § 1441(b) ("CAFA"). In his Complaint (later amended), Plaintiff alleges BMW and the Doe defendants surreptitiously recorded telephone calls with users of the BMW Assist service, without customers' knowledge or consent. The original Complaint alleged various claims stemming from these recordings, including the violation of *Cal. Penal Code*, § 630 *et. seq.*, and sought statutory damages pursuant to *Penal Code* § 637.2 of $5,000 per allegedly unlawful recording. Declaration of Daniel F. Gaines in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Gaines Decl.") at ¶ 7.

Shortly after removal, Plaintiff discovered ATX may be a proper defendant and added it as a party to a First Amended Complaint filed in this Court on or about November 17, 2010 (Docket No. 3). ATX principally administers the operations of the BMW Assist service, including operating the call centers which take BMW Assist calls. Gaines Decl. at ¶ 8.

Plaintiff filed the Second Amended Complaint ("SAC") on May 18, 2011, asserting claims for invasion of privacy (violations of California Penal Code section 630 *et. seq.*) and negligence (Docket No. 26). In the SAC, Plaintiff seeks statutory damages pursuant to Penal Code section 637.2, injunctive relief pursuant to Penal Code 637.2(b), and compensatory damages. Gaines Decl. at ¶ 9.

Plaintiff engaged in extensive discovery and investigation during the course of more than one year of litigation in preparing for a class certification motion and a motion for summary judgment. Plaintiff's counsel took multiple depositions in Los Angeles, New York, and Dallas, and we prepared, served and reviewed written interrogatories, requests for admission, and numerous document production requests. Plaintiff's counsel has reviewed thousands of documents produced in connection with the litigation, engaged in extensive research and inquiry with respect to the claims asserted in the Action, and has vigorously litigated the matter on behalf of the class. Gaines Decl. at ¶¶ 10-11.

The facts are clear. BMW hired ATX to implement the BMW Assist program it offers in its automobiles. For quality assurance purposes, approximately 99% of all calls with the BMW Assist service – either through a vehicle's wireless telephone connection or via a call to the BMW Assist toll-free phone number – are recorded. Prior to the commencement of this lawsuit, callers were provided no contemporaneous verbal disclosure that their calls would be recorded, which Plaintiff contends violates the laws at issue in his SAC. Gaines Decl. at ¶ 12.

Without admitting liability, shortly after the commencement of this action, ATX began to provide a verbal disclosure to all callers to the BMW Assist service at the outset of their calls that the call may be recorded or monitored. Notwithstanding these changes – which the settlement agreement requires (subject to certain conditions) – Defendants assert numerous defenses to both certification and the merits of Plaintiff's and class members' claims, including but not limited to defenses based on disclosures and authorizations contained in the Subscription Agreement required to receive BMW Assist Services and on the BMW Assist website and that the drafters of the applicable statutes did not intend them to govern the types of conduct Plaintiff's allege. Gaines Decl. at ¶ 13.

Plaintiff steadfastly maintained the viability and likely success of his claims on a classwide basis.

Following extensive discovery and assessment of the risks involved in further litigation, the Parties engaged in pre-certification settlement discussions, which included a formal mediation session on April 25, 2011 with the Honorable George P. Schiavelli, United States District Judge, Retired. The mediation session did not result in a settlement, and litigation continued. Gaines Decl. at ¶ 14.

On or about May 13, 2011, Plaintiff filed his motion for class certification. The Parties requested, and the Court approved, several continuances of the hearing on this motion so the Parties could attempt to negotiate a resolution prior to the ruling Plaintiff's motion for class certification. Plaintiff recognized that if Plaintiff did not prevail on this motion, few – if any – class members would ever pursue individual claims based on allegations of the Action, because of both the novelty and surreptitious nature of the alleged privacy violations. Gaines Decl. at ¶ 15.

Recognizing the substantial risks to all Parties on a ruling on Plaintiff's motion for class certification, the Parties agreed to participate in a second mediation session on September 27, 2011 with the Honorable Stephen E. Haberfeld, United States Magistrate Judge, Retired. Again, no agreement to resolve the case was reached. Litigation and settlement discussions continued. Gaines Decl. at ¶ 16.

Following lengthy and intensive negotiations, on or about November 10, 2011, the Parties reached an agreement in principle to resolve the entire action (excluding terms regarding payment of Plaintiff's counsel's attorneys' fees and costs, and Plaintiff's service payment, which were subsequently negotiated and agreed to in January 2012. Gaines Decl. at ¶ 17.

The Settlement Agreement and Release, entered into on January 24, 2012, embodies a comprehensive resolution of all claims encompassed in the Action. Gaines Decl. at ¶ 18.

\\

\\

\\

## III. SUMMARY OF SETTLEMENT TERMS

A copy of the Settlement Agreement and Release is attached and marked Exhibit "A" to the Declaration of Daniel F. Gaines (hereinafter "Stipulation of Settlement" or "Stip."), submitted herewith. Its significant terms are set forth below.

### A. The Settlement Class

The Settlement Class is defined as:

> Individuals who connected to BMW Assist between October 13, 2009 and February 1, 2011 through BMW Assist subscription accounts with California billing addresses.

Stip. at ¶ I(11). Excluded from the class are (1) BMW NA and ATX, their subsidiaries and affiliates, officers, directors, and employees, (2) all persons and/or entities claiming to be subrogated to the rights of Class Members, (3) individuals and/or entities who validly and timely opt-out of the Settlement, (4) Class Members who previously have released their claims against BMW NA or ATX with respect to the issues raised in the Litigation, (5) individuals or entities that have purchased and/or leased Class Vehicles as "fleet" vehicles (*i.e.* authorized BMW Centers, rental companies, or entities that purchased BMW vehicles as company vehicles), and (6) the Judge(s) and/or attorneys to whom the Litigation is or will be assigned. *Id.*

### B. Settlement Consideration

#### 1. Cash Benefit to Class Members who Submit a Claim

Defendants will establish a non-reversionary fund of $300,000, from which Class Members may affirmatively submit a claim to receive a cash payment. Each class member who submits a claim will be paid a pro rata share of the fund, not to exceed $50 each. Stip. at ¶ 24. The Parties propose that, subject to the Court's approval, any unclaimed portion of the fund will be paid to Big Brother/Big Sister of America, Defendants' designated charitable organization. Stip. at ¶ 6.

**2. Non-Cash Benefit to Class Members Who Do Not Submit a Claim**

In addition the non-reversionary fund described above, Defendants shall provide a service benefit to all Class Members, except those who affirmatively elect to be paid the cash option or opt-out from the settlement altogether. No claim is required to receive the service benefit, and it will automatically be available to each and every Class Member who has not elected to receive the cash benefit and submits a signed "Subscription Agreement Addendum." Stip. at ¶ I.35.

The service benefit, with a retail value of approximately $100.00, consists of one of the following, depending upon the class members' existing BMW Assist account status and their preference: (1) a 6-month upgrade to the BMW Assist "convenience plan"; (2) a 6-month extension to the BMW Assist basic safety plan; or (3) a 6-month enrollment in the BMW Assist basic safety plan (with costs of re-provisioning vehicle, if any, to be paid by the claimant). Stip. at ¶ I.31. To receive the service benefit, Class Members must enter into a Subscription Agreement Addendum, which will be made available on the settlement website and mailed as part of the class notice package. Stip. at ¶ I.35.

The service benefit is transferrable. It may be transferred on a one-time basis prior to the initiation of the service upgrade/extension under the Settlement to another car that has access to the BMW Assist program within the same household. Stip. at ¶ III.E.

**3. Non-Monetary Relief**

Without admitting liability, Defendants have agreed to comply with the requirements of *Cal. Penal Code* § 630 *et. seq.*, including providing contemporaneous verbal notification to California BMW Assist callers when their telephone calls may be recorded. Stip. at ¶ III.D.

\\

\\

**4. Payment of Claims Administration Expenses**

Defendants have tentatively selected either Gilardi & Co, LLC or Kurtzman Carson Consultants LLC as settlement administrator (to be decided by Defendants by the time of the preliminary approval hearing, and with Defendants reserving the right to name a new administrator subject to Court approval). Both of these companies are experienced and reputable settlement administrators who are competent to provision notice and facilitate the claims/opt-out process. The cost of settlement administration shall be borne exclusively by Defendants separate and apart from all other payments and services they are obligated to provide by the Settlement. Stip. at ¶ I.10.

**5. Service Payment to the Class Representative**

The Settlement provides that Plaintiff Skuro may request a service payment of up to $10,000, subject to the Court's approval, which is intended to compensate him for 1) his damages recoverable as a result of the claims alleged in the SAC, and 2) the time, expense, and risk he has expended in bringing this lawsuit for the benefit of Class Members. Stip. at ¶ IX.C. The service payment, if awarded, shall be borne exclusively by Defendants separate and apart from all other payments and services they are obligated to provide by the Settlement. Stip. at ¶ IX.C.

**6. Attorneys' Fees and Costs to Class Counsel**

The Settlement provides that Plaintiff's counsel may request up to $550,000 as an award of attorneys' fees, representing approximately 10% of the total value of the settlement consideration, in consideration of the time and effort they have expended for the benefit of Plaintiff and Settlement Class Members In addition, the Settlement provides that Plaintiff's counsel may request up to $15,000 in reimbursement of litigation costs actually and reasonably incurred during the course of this litigation. All attorneys' fees and costs awarded following a further motion by Plaintiff's counsel at the final approval stage shall be borne exclusively by Defendants separate and apart from all other payments and services they are obligated to provide by the Settlement. Stip. at ¶ IX.B.

### C. The Release by Plaintiff and Class Members

The release, to which all Class Members (except for those who submit a valid and timely request for exclusion) will be bound, is as follows:

> "Defendants are released from any and all known and unknown claims or causes of action that were, or could have been, asserted by the Plaintiff or any Class Members against them, based upon the facts and claims alleged in the Action (the "Released Claims"). While the Release given by this Settlement Agreement is not a general release, Plaintiff and Class Members expressly waive and relinquish to the fullest extent permitted by law, the rights provided by Section 1542 of the California Civil Code with respect to the Released Claims, which provides as follows:
>
> > A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which if known by him must have materially affected his settlement with the debtor.
>
> Plaintiff and the Settlement Class Members recognize that, even if they later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the Final Approval Order and accompanying Judgment, Plaintiff and the Settlement Class Members fully, finally, and forever settle and release any and all of the Released Claims. The Parties acknowledge that the foregoing waiver and release was bargained for and is a material element of the Settlement Agreement."

Stip. at ¶ VIII(A).

## IV. PRELIMINARY SETTLEMENT APPROVAL PROCESS

A class action may not be dismissed, compromised or settled without court approval. Fed. R. Civ. P. ("FRCP") 23(e). Judicial proceedings under the Federal Rules of Civil Procedure have led to a defined procedure and specific criteria for settlement approval in class actions that are thoroughly described in the Manual for Complex Litigation (Fourth) ("*Manual* (Fourth)") § 21.62 (2004). Federal Rule of

Civil Procedure 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing Manual for Complex Litigation (Third) § 30.41 (1995)).

Preliminary settlement approval and notice to the proposed class are appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n. 12 (E.D. Pa. 2001)); *see also Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1027 (9th Cir. 1998) (the court's task is to "balance a number of factors," including "the risk, expense, complexity, and likely duration of further litigation," "the extent of discovery completed and the stage of the proceedings," and "the amount offered in settlement"). This procedure for preliminary approval of settlement agreements, endorsed by the leading class action commentator, Professor Newberg, and commonly used by Federal courts, safeguards class members' procedural due process rights and enables a court to fulfill its role as the "guardian" of the class. *See* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* ("*Newberg*"), § 11.22 (4th ed. 2002).

The approval or rejection of the proposed settlement is committed to the Court's sound discretion. *See Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1276 (9th Cir. 1992) (in the context of a class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon a strong showing of abuse of discretion).

The Court's preliminary evaluation of the proposed settlement purports to determine whether it is within the permissible "range of reasonableness" and thus,

whether the notice to the class is appropriate. 4 *Newberg* § 11.25-26; Manual for Complex Litigation (Third) ("*Manual* (Third)") § 30.41 (1995).

**A. Provisional Certification of the Settlement Class**

The Parties request that the Court provisionally certify the proposed Settlement Class. Provisional class certification is appropriate at the preliminary approval stage where, as here, the proposed settlement class (as defined in the parties' Settlement) has not previously been certified by the Court, and the requirements for certification are met. 4 *Newberg* § 11.22; *see generally*, Gaines Decl. at ¶¶26-34. Pragmatically, provisional class certification facilitates distribution of notice on the terms of the proposed settlement and the date and time of the final approval hearing to all settlement class members. *See Manual* (Third) § 30.41.

The additional rulings sought by this motion – approving the form, content and distribution of the Settlement Documents and scheduling a formal fairness hearing – facilitate the settlement approval process, and are also traditionally made at this preliminary approval stage. 4 *Newberg* § 11.26.

**B. Settlement Administration Timeline**

The following schedule sets forth a proposed sequence for the relevant dates and deadlines embodied in the Settlement, conditioned upon this Court granting preliminary approval of the proposed Settlement. This is outlined in the Proposed Order filed herewith. *See* Stip. at ¶ 10.2:

| | |
|---|---|
| Last day for Defendants to mail notice to Class Members | 60 days after preliminary approval |
| Last day for requests for exclusion from the settlement and claims for a cash payment to be postmarked by Class Members | 120 days after preliminary approval |
| Last day for Plaintiff to file motion for final approval of settlement and application for attorneys' fees and costs, class representative's service payment, and claims administration expenses | 127 days after preliminary approval |
| Last day for Class Members to file objections to the settlement | 134 days after preliminary approval |

| Last day for the Parties to reply to any objections filed by Class Members | 144 days after preliminary approval |
|---|---|
| Hearing on motion for final approval of settlement and application for attorneys' fees and costs and class representative's service payment | 154 days after preliminary approval (or as otherwise set by the Court |

## V. PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation. *See* 4 *Newberg* § 11.41 (and cases cited therein); *Van Bronkhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976).

Preliminary evaluation of class action settlements is intended to determine only whether the proposed settlement is within the range of possible approval or whether it is potentially fair, as the Court will make a final determination on adequacy at the final approval hearing. *See Acosta v. Trans Union LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007); *In re Traffic Exec. Ass'n*, 627 F.2d 631, 633-34 (2d Cir. 1980); 4 *Newberg* § 11.25.

The Court thus has broad powers to determine whether a proposed settlement is fair under the circumstances of the case, *see Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Acosta*, 243 F.R.D. at 384 (citing *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977)), and preliminary approval of a settlement agreement should be granted unless there are reasons to doubt its fairness or there are other "obvious deficiencies" in the proposed settlement making it clear it would not ultimately weather a final approval hearing. *See In re Prudential Securities, Inc.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

To make this fairness determination, courts consider several relevant factors, including the strength of the plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial,

the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, as well as the experience and views of counsel. *Torrisi*, 8 F.3d at 1375. This list of factors is not exclusive, however, and the court may balance and weigh factors differently depending on the factual circumstances of each case. *See id.* at 1376.

The *Manual* summarizes the preliminary approval criteria as follows:

"If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval**,** the court should direct that notice . . . be given to the Class Members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *Manual* (Third) § 30.41; *see also* 4 *Newberg* § 11.25.

When examining settlement agreements, a presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. 4 *Newberg* § 11.41.

Here, the proposed Settlement clearly falls well within the range of reasonableness as the terms of the agreement are fair and adequate and provide a fair result for Plaintiff and Class Members, especially considering the complexities of the case, the substantial risk inherent in non-certification, and the risks of not prevailing on the merits at trial. Gaines Decl. at ¶¶ 16-25. Further, Plaintiff has engaged in extensive discovery during more than a year of litigation, including depositions, review of thousands of documents, and extensive written discovery. The Parties have engaged in informed, good faith, arms-length negotiations with adequate access to

necessary information, and did so with the assistance of two highly regarded and experienced mediators. *See generally* Gaines Decl. at ¶¶ 11-25.

Both Plaintiff's counsel and Defendants' counsel are experienced in class action matters and are capable of assessing the strengths and weaknesses of claims and the benefits of the proposed Settlement under the circumstances of the case and in the context of a private, consensual agreement. Plaintiff's counsel believes the Settlement offers a fair result to Class Members, commensurate with the risks of further litigation. Accordingly, preliminary approval of the Settlement is appropriate. Gaines Decl. at ¶ 2-6, 16-24; Declaration of Kenneth S. Gaines at ¶¶ 2-5; Declaration of Alex P. Katofsky at ¶¶ 2-4.

### A. The Terms of the Proposed Settlement Provide Reasonable Compensation for Plaintiff's and Class Members' Damages

Ultimately, a settlement should stand or fall on the adequacy of its terms. *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981).

This matter presents a unique factual pattern and the Settlement reflects an excellent compromise.

The bases of the Class Members' claims are statutes and case law which render the recording of telephone conversations without the consent of all parties to the conversation tortious conduct. Gaines Decl. at ¶¶ 8, 12. The California Penal Code provides for statutory damages of $5,000 per occurrence (*California Penal Code* § 637.2).

Based upon the discovery completed thus far and the nature of the claims alleged, neither Plaintiff Skuro, nor any other Class Member, has suffered actual damages as a result of the conduct alleged in the lawsuit. In fact, it is suspected that few – if any – Class Members even realize they have been subject to the harm alleged on their behalf. Based on this analysis, whatever Class Members receive will be nothing short of a windfall in exchange for the release of claims which they do not know they have. Gaines Decl. at ¶ 19.

However, the purpose of the relevant laws – to discourage the surreptitious recording of telephone calls – will be advanced by this Settlement in several ways. The Defendants have not only changed their business practices by agreeing not to record telephone calls in the future without full verbal disclosure going forward, but they are providing a common fund and valuable services to compensate Class Members. Stip. at ¶ III.D; Gaines Decl. at ¶ 20.

Defendants' defenses to certification and liability are an important basis for validating the reasonableness of the settlement amount. BMW and ATX have consistently maintained that they have ample legal and factual grounds for defending this action on both class and merits issues. Gaines Decl. at ¶ 21.

Perhaps Defendants' strongest defense was Plaintiff's and Class Members' purported knowledge of, and consent to, their call recording. Defendants contend that each and every Class Member was provided with, and bound by, a subscription agreement which adequately disclosed that calls with the BMW Assist service would be recorded. There is no published opinion which addresses whether such a written disclosure satisfies the notice requirements of *Penal Code* § 630 *et. seq.* If it does, Plaintiff's claims would be defeated in their entirety. Gaines Decl. at ¶ 22.

Defendants also argue that, based on the arbitration provision found in BMW Assist user subscription agreements, and the Supreme Court's recent decisions in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S.Ct. 1758 (2010) and *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011), Plaintiff should be compelled to arbitrate his claims individually, with no class relief available. This would defeat Class Members' claims in their entirety and potentially leave them without any recourse due to the surreptitious nature of the privacy violations alleged. Gaines Decl. at ¶ 23.

Defendants further contend that, despite Plaintiff's claim for statutory damages of $5,000 per Class Member, Plaintiff and Class Members are limited to damages in the amount of the price they paid for their BMW Assist service (in the case of new

car purchases – such as Plaintiff – nothing), based on a damage limitation provision in the BMW Assist subscription agreement. If Defendants prevailed on this argument, this would effectively defeat the vast majority of the value in Plaintiff's claim. Gaines Decl. at ¶ 24.

In considering the reasonableness of this settlement, Plaintiff was also keenly aware of the doctrine of annihilating damages and its potential impact on a class certification ruling. Several courts in the Central District of California have denied class certification of cases when the potential damage exposure following certification could potentially be so large that it would be "annihilating" to the Defendant. *See Najarian v. Avis Rent a Car Sys.*, No. CV 07-0588, 2007 U.S. Dist. LEXIS 59932 (C.D. Cal. June 13, 2007); *Soualian v. Int'l Coffee & Tea LLC*, No. CV 07-0502, 2007 US. Dist. LEXIS 44208 (C.D. Cal June 11, 2007). Although the Ninth Circuit recently partially rejected the reasoning in these cases (*see Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010)), it still left open the possibility that the annihilating damages doctrine could bar certification. *See* Gaines Decl. at ¶ 25.

With respect to liability on the merits, Defendants argued that even if class certification was granted and even if Plaintiff prevailed at trial, any potential damage award would almost certainly be reduced through the Court's equitable powers (*see Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006) [wherein the Supreme Court applied its equitable powers to reduce substantial statutory damages to zero]). Gaines Decl. at ¶ 26. Based on recording approximately 80,000 phone calls during the applicable time frame, Defendants' maximum exposure exceeded nearly half a billion dollars – with no actual harm to any Class Member. *See id.*; *see also Ratner v. Chemical Bank NY Trust Co.*, 54 F.R.D. 412, 416 (S.D.N.Y. 1972); *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 234-35 (9th Cir. 1974) (reversing the trial court's certification of an antitrust action involving 400,000-800,000 transactions and damages of more than $250 million, finding that class treatment was not superior as it

would subject the defendants to "staggering damages" disproportionate to the actual harm suffered).

Plaintiff, however, argued in favor of certification on numerous bases, including the fact that the alleged violations here were secret, class members did not know their telephone calls were being violated, and as a result, a class action was the only possible manner (e.g. it was superior to other forms of adjudication) by which to litigate these claims. Gaines Decl. at ¶ 27.

Plaintiff's counsel have litigated, or are familiar with, several other class action settlements approved by California state and federal courts which allege similar privacy-related violations on behalf of California consumers. The value of the non-reversionary fund alone (excluding entirely the substantial value of the service benefit) is commensurate with the net settlement value (after deductions for attorneys' fees, costs, and administration expenses, if applicable) of these other settlements on a per class member basis, as shown below[3]:

| Case Name | Case No. | Net Settlement Amount | Total Class Members | Settlement Amount per Class Member |
|---|---|---|---|---|
| Batmanghelich v Sirius XM Radio | CV09-9190 VBF (C.D. Cal.) | $7,000,000 | 3,500,000 | $2.00 |
| Greenberg v. E*Trade | L.A. Sup. Ct. BC360152 | $5,625,000 | 1,400,000 | $4.02 |
| Marenco v Visa | CV10-08022 DMG (C.D. Cal.) | $13,000,000 | 648,000 | $20.06 |
| Cohorst v. BRE Properties | CV10-02666 (S.D. Cal.) | $3,500,000 | 1,170,000 | $2.99 |

[3] All numbers are approximate and are based on documents publicly filed in these cases. Certain information was not available and, in such cases, reasonable estimates are used.

| **Skuro v. BMW, ATX** | **CV10-8672 GW (C.D. Cal.)** | **$300,000** | **43,000** | **$6.98** |
|---|---|---|---|---|

Adding in the value of the service benefit, the total compensation per-class member here is approximately $107 – a well above "average" result. Gaines Decl. at ¶ 28.

Considering the risk that the Class would not be certified and that Plaintiff would not succeed at trial (or that a substantial judgment in the class' favor would be reduced after trial), the present settlement represents an excellent compromise of Plaintiff's claims. Gaines Decl. at ¶ 29.

### B. The Settlement is the Product of Serious, Arm's-Length, Informed Negotiations and There are no Indications Present to Doubt its Fairness

The Parties engaged in arm's-length, informed negotiations during the course of contentious litigation in order to reach the proposed Settlement. Gaines Decl. at ¶¶ 14-18.

The judgment of experienced counsel is also an important factor in a court's determination that negotiations were fair and informed. Absent fraud and collusion, the court may not only *rely* upon the judgment of experienced counsel, but should be hesitant to "substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Officers for Justice v. Civ. Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Furthermore, the involvement of an objective, third-party neutral tends to demonstrate the presence of arm's-length negotiations. *See Martens v. Smith Barney*, 181 F.R.D. 243, 262-63 (S.D.N.Y. 1998).

Class Counsel have conducted significant investigation and discovery into the facts of this class action case, including taking depositions of the persons most knowledgeable at BMW and ATX in New York and Dallas. BMW and ATX have produced thousands of pages of documents, all of which were reviewed and analyzed

in advance of settlement negotiations. Extensive written discovery was exchanged as well. Gaines Decl. at ¶ 10.

Based on this investigation and evaluation, Plaintiff's counsel firmly believe the Settlement, on the terms set forth in the Stipulation, is fair, reasonable, adequate, and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay, the risk the Settlement Class will not be certified by the Court, defenses asserted by Defendants, and numerous potential appellate issues. Preliminary approval of the Stipulation of Settlement is appropriate. Gaines Decl. at ¶¶ 6, 19-29.

## VI. PROVISIONAL CLASS CERTIFICATION IS APPROPRIATE

The Named Plaintiff may, at the preliminary approval stage, request that the Court provisionally approve certification of the class for settlement purposes, conditioned upon final approval of the settlement. 4 *Newberg* § 11.26 (the court's findings "at a preliminary hearing or conference concerning a tentative settlement proposal . . . may be set out in conditional orders granting tentative approval to the various items…. These conditional rulings may approve a temporary settlement class, the proposed settlement, and the class counsel's application for fees and expenses.") Before a court evaluates a settlement under Federal Rule of Civil Procedure 23(e), it must determine that the settlement class satisfies the requirements enumerated under Rule 23(a) and at least one of the requirements in Rule 23(b). *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003). As discussed below, the proposed class meets all of the requirements of certification for settlement purposes.

### A. FRCP 23(a) Requirements For Class Certification Are Met

Preliminary approval of the Settlement is justified because the class certification requirements exist for the Settlement Class. Rule 23(a) provides the factors that the Court looks to for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are

typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. All four of these elements are satisfied by the proposed class for Settlement purposes.

**1. Numerosity**

If the class is sufficiently large that joinder of all members is impractical or that individual joinder is impractical, the numerosity requirement is met. *See Cox v. American Cast Iron Pipe*, 784 F.2d 1546, 1557 (11th Cir. 1986).

The class contains approximately 43,000 members. Therefore, joinder of individual claims would be impractical and the numerosity requirement is satisfied for settlement purposes only. Gaines Decl. at ¶ 32.

**2. Commonality**

The commonality requirement of Rule 23(a) is met if there are common questions of fact and law among the class. *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class"). Here, the Settlement Class Members all seek the same remedies under identical state laws under the same theories of recovery, all relating to the surreptitious recording of telephone conversations. The same factual predicates apply to each and every Class Member. The Settlement compensates Class Members for these identical claims. Gaines Decl. at ¶ 33. Under these circumstances, the commonality requirement is satisfied for settlement purposes. *Id*. at 1019-20; *see also Cox*, 784 F.2d at 1557.

**3. Typicality**

The typicality requirement of Rule 23(a) is met if the claims of the Named Plaintiff are typical of the class, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Factual differences may exist between the class and the Named Plaintiff, provided the claims arise from the same events or course of conduct and are based upon the same legal theories. *Id.* Moreover, the typicality and commonality elements of Rule 23(a) "tend to merge" because both assess whether the

claims of the class and the named plaintiffs are sufficiently interrelated to make class treatment appropriate. *Gen. Tel. Co. of the SW v. Falcon*, 12 S.Ct. 2364, 457 U.S. 147, 157 n. 13 (1982).

Here, Plaintiff Skuro's claims are not only typical of those of all Class Members – they are identical. Plaintiff alleges his telephone conversations with Defendants were recorded without adequate notice or consent. This is the same claim alleged on behalf of all Class Members. Gaines Decl. at ¶ 34. Plaintiff satisfies the typicality requirement for settlement purposes because his claims arise from the same factual basis and are based on the same legal theories as those applicable to all Settlement Class Members. *Welmer v. Syntex* 117 F.R.D. 641, 644 (N.D. Cal. 1987).

**4. Adequacy of Representation**

Rule 23(a)(4) requires that the named plaintiff and class counsel fairly and adequately represent and protect the interests of the class. If the Named Plaintiff and Class Counsel have no interests adverse to the interest of the proposed class members and are committed to vigorously prosecuting the case on behalf of the class, then the adequacy requirement is met. *Hanlon*, 150 F.3d at 1020; *see also Griffin v. Carlin*, 755 F.2d 1516 (11th Cir. 1985).

Here, Plaintiff Sean Skuro has interests directly aligned with all Class Members and has prosecuted this case on their behalf for an extended period. He has no apparent conflicts with Class Members. He has demonstrated his commitment to prosecute this Action on their behalf through its conclusion. Gaines Decl. at ¶ 35.

Under the proposed Settlement, Mr. Skuro will request a small service payment – $10,000 – for his significant time and efforts, including sitting for his deposition and assisting Class Counsel with factual issues surrounding the case. This award represents about one-fifth of one percent of the total value of the settlement consideration, and therefore does not constitute a sufficient conflict of interest to foreclose fulfilling the adequacy requirement. *See* Stip. at ¶ 3.6; Gaines Decl. at ¶ 36.

Additionally, Plaintiff's counsel are highly experienced litigators, with more than five decades of collective litigation experience. As evidenced by the declarations of Kenneth S. Gaines, Daniel F. Gaines, and Alex P. Katofsky, filed herewith, each has substantial experience prosecuting complex class action cases, both in the consumer and employment contexts. As such, there is no conflict of interest between the Named Plaintiff, proposed Class Counsel, and the Settlement Class Members, and the adequacy element is met. Gaines Decl. at ¶¶ 2-5, 37; Kenneth S. Gaines Declaration at ¶¶ 2-5; Alex P. Katofsky Declaration at ¶¶ 2-4.

**B. FRCP 23(b)(3) Requirements for Class Certification are Met**

The proposed Settlement Class also meets the requirements of Rule 23(b)(3) for settlement purposes because: 1) common questions predominate over questions that affect individual members; and 2) class resolution is superior to other available methods of adjudication. When assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618-620 (1997). A showing of manageability at trial is unnecessary; the dispositive inquiry at this stage is "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 618-20, 623; *see also Hanlon*, 150 F.3d at 1022.

**1. Predominance**

The claims of the Settlement Class here are sufficiently cohesive to warrant certification. For settlement purposes, common questions of fact and law affecting proposed Class Members in this case clearly predominate over questions that may affect individual members. In analyzing predominance, as with commonality, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Cox*, 784 F.2d at 1557. The test is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. Here, the proposed Settlement Class is sufficiently cohesive because all Settlement Class Members share a common nucleus

of facts and potential legal remedies – the same facts and law govern their claims; this Court could try their claims in representative fashion by common evidence regarding Plaintiff's and Class Members' claims, and identical law applies. All of the Settlement Class Members seek damages based on the same allegations. As a result, common questions of law and fact predominate here. Gaines Decl. at ¶ 38.

**2. Superiority**

Particularly in the settlement context, class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. *See Hanlon*, 150 F.3d at 1023. The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Id.* At 1023. Here, as in *Hanlon*, the alternative method of resolution is individual claims for relatively small amounts of damages, proving uneconomical for potential plaintiffs because the cost of litigation dwarfs potential recovery. *Id.*

Perhaps the most persuasive argument in favor of the superiority of class treatment here is the surreptitiousness of the alleged violations by Defendants; were a class not certified, many (if not all) Class Members would not bring claims for the violations alleged, because few (if any) know their calls were recorded: Defendants' alleged unlawful conduct, by its very nature, is secret. As a result, class treatment is a superior method for adjudicating these claims, and a class action is the preferred method of resolution. Gaines Decl. at ¶ 39.

## VII. THE PROPOSED CLASS NOTICE IS APPROPRIATE

### A. The Class Notice Satisfies Due Process

The Class Notice, attached as Exhibit "1" to the Stipulation of Settlement, is intended to apprise all Class Members of the litigation and their right to claim a share of the cash portion of the settlement, elect the service benefit, (or opt-out of/object to it). The proposed notice meets the standards set forth in Rule 23(c)(2)(B) for classes certified under Rule 23(b)(3). Defendants have last known addresses for all Class

Members, each of which currently or formerly subscribed to the BMW Assist service. Notice shall be provided by U.S. first class mail.

Claims forms and the subscription agreement addendum may be accessed and submitted online through a website to be developed by the Settlement Administrator. The website shall also include information about the Action, including relevant documents.

**B. The Proposed Notice is Accurate and Informative**

The proposed notice provides information on the meaning and nature of the proposed settlement and Settlement Class, the terms and provisions of the Settlement, the relief the Settlement will provide Settlement Class Members, the amount of the proposed service payment to Named Plaintiff, the amount of attorneys' fees and costs that Class Counsel may request, and the date, time and place of the final approval hearing. The notice clearly and accurately describes the nature of the action, the definition of the Settlement Class, and the class claims. *See* Ex. "1" to Stipulation. The notice also informs class members that they may enter an appearance through counsel if they so desire, indicate that the Court will exclude from the class any member who requests exclusion, and explains the binding nature of class judgment under Rule 23(c)(3). *Id.* The notice also provides class members with an opportunity to file objections to the settlement as required by Rule 23(e)(4)(A). *Id.*

Further, the notice also fulfills the requirement of neutrality in class notices. *See* 2 *Newberg* § 8.39. It summarizes the proceedings to date, Plaintiff's allegations, and the terms and conditions of the Settlement, in an informative and coherent manner, in compliance with the *Manual's* statement that "the notice should be accurate, objective, and understandable to Class Members. . . ." *Manual* (Third) at § 30.211. The notice clearly states that the Settlement does not constitute an admission of liability, and recognizes that the Court has not ruled on the merits of the action. It also states that the final Settlement approval decision has yet to be made. Accordingly, the notice complies with the standards of fairness, completeness and

neutrality required of a settlement class notice disseminated under authority of the Court. *See* Fed. R. Civ. P. 23(c)(2), 23(e); 2 *Newberg* §§ 8.21, 8.39; *Manual* (Third) §§ 30.211, 30.212.

**VIII. A FINAL APPROVAL HEARING SHOULD BE SCHEDULED**

The last step in the settlement approval process is the formal hearing, at which the Court may hear all evidence and argument necessary to evaluate the Settlement. At that hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of Settlement approval, and members of the Settlement Class, or their counsel, may be heard in support of or in opposition to the Settlement Agreement. The parties recommend that the hearing be held approximately 154 days after preliminary approval by the Court, or on or about August 2, 2012, which would give the Parties sufficient time to commence the administration process and complete the notice program. At the same time, Plaintiff will file and brief his application for an award of attorneys' fees and costs, and for the Plaintiff's incentive award.

**IX. CONCLUSION**

The Settlement is fair and reasonable and all of the requirements for preliminary approval are met. The Court is therefore requested to grant this motion and enter and order in the form submitted concurrently.

DATED: January 24, 2012

Respectfully submitted,

GAINES & GAINES,
A Professional Law Corporation

By: /s/

KENNETH S. GAINES
DANIEL F. GAINES
ALEX P. KATOFSKY
Attorneys for Plaintiff Sean Skuro and Proposed Class Counsel