KENNETH S. GAINES, ESQ. SBN 049045
ken@gaineslawfirm.com
DANIEL F. GAINES, ESQ. SBN 251488
daniel@gaineslawfirm.com
ALEX P. KATOFSKY, ESQ. SBN 202754
alex@gaineslawfirm.com
**GAINES & GAINES, APLC**
21550 Oxnard Street, Suite 980
Woodland Hills, CA 91367
Telephone: (818) 703-8985
Facsimile:  (818) 703-8984

Attorneys for Plaintiff Sean Skuro
and Proposed Class Counsel

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| SEAN SKURO, on behalf of himself and all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware limited liability company, ATX Group, Inc., a Texas corporation, and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.: CV 10-8672-GW (FFMx)<br><br>**DECLARATION OF DANIEL F. GAINES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**DATE: February 23, 2012<br>TIME: 8:30 A.M.<br>COURTROOM: 10<br>JUDGE: Hon. George H. Wu** |

I, DANIEL F. GAINES, hereby declare and state as follows:

1. I am an attorney duly admitted to the practice of law in the State of California. I am a partner/shareholder of Gaines & Gaines, APLC, co-counsel for Plaintiff Sean Skuro and proposed Class Counsel in this action. I have personal knowledge of the facts set forth herein and if called as a witness to testify to them, I could and would do so competently.

2. I obtained my BS degree from the University California at Berkeley in 2003. I majored in Business Administration at the Haas School of Business.

3. Thereafter, I attended the University of Virginia School of Law. At Virginia, I was a member of the editorial board of the Virginia Tax Review. I was also the recipient of the Lacy Armour Scholarship, awarded to recognize academic excellence. At Virginia, I focused my studies on tax and real estate. I earned my JD and became a member of the California Bar in 2007.

4. Since becoming a member of the Bar, I have practiced law with my partner/father, Kenneth, at Gaines & Gaines, APLC. Our practice specializes in litigation, and the vast majority is attributed to complex class action matters like this one.

5. My firm has participated, as lead counsel and co-lead counsel, in over 45 class action matters, including the following:

    a. *Williams v. Closet World*
        Los Angeles County Superior Court Case No. BC400178

    b. *Flores v. Cintas Corporation, et. al.*
        Los Angeles County Superior Court Case No. BC400422

    c. *Cortellessa v. Dotnext, Inc.*
        Alameda County Superior Court Case No. RG09429971

    d. *Adams v. Newell Rubbermaid, et. al.*
        USDC-CD Case No. EDCV 08-1499 JTM (CTx)

\\

|   |   |   |
|---|---|---|
| e. | *Dorsette v. TA Operating, LLC* |
|    | USDC-CD Case No. EDCV 09-1350 PA (RZx) |
| f. | *Gomez v. Pizza Hut of Southeast Kansas, Inc.* |
|    | San Bernardino Cty Superior Court Case No.CIVVS900679 |
| g. | *Burgess, et. al. v. Strategic Retail Solutions, LLC* |
|    | Los Angeles County Superior Court Case No. BC413791 |
| h. | *Tigas v. Ajilon Communications* |
|    | Los Angeles County Superior Court Case No. BC409737 |
| i. | *Schrader, et. al. v. Adidas Promotional Retail Operations, Inc.* |
|    | Los Angeles County Superior Court Case No. BC414168 |
| j. | *Batmanghelich v. Sirius XM Radio, Inc.* |
|    | USDC-CD Case No. CDCV09-9190 VBF |

6. Based on my own investigation and evaluation, I am of the opinion that the Settlement reached in this Action, including its financial and non-financial terms, its allocation among Class Members, and the recovery for each Class Member, is fair and reasonable and provides adequate compensation in consideration for the claims to be released. I believe I have a strong understanding of the trends in both the likelihood of certification of cases such as this one and the value of settlements of such cases. My opinion takes into consideration the amounts received in other similar class actions which I have litigated and/or am familiar with, the risks inherent in litigation of this genre, and the reasonable tailoring of each Class Members' claim to the amount received in settlement. Based on that knowledge, I am of the opinion the settlement is fair, reasonable and adequate and is in the best interests of the Class.

**Procedural History of the Action:**

7. On October 13, 2010, Plaintiff filed a Class Action Complaint against BMW and Doe defendants in the Los Angeles Superior Court, which BMW removed to the United States District Court for the Central District of California pursuant to CAFA. Plaintiff alleges BMW and the Doe defendants surreptitiously recorded

telephone calls with users of the BMW Assist service, without customers' knowledge or consent. The original Complaint alleged various claims stemming from these recordings, including the violation of *Cal. Penal Code*, § 630 *et. seq.*, and sought statutory damages pursuant to *Penal Code* § 637.2 of $5,000 per allegedly unlawful recording.

8. Shortly after removal, Plaintiff discovered ATX may be a proper defendant and added it as a party to a First Amended Complaint filed in this Court on or about November 17, 2010 (Docket No. 3). ATX principally administers the operations of the BMW Assist service, including operating the call centers which take BMW Assist calls.

9. Plaintiff filed the Second Amended Complaint ("SAC") on May 18, 2011, asserting claims for invasion of privacy (violations of California Penal Code section 630 *et. seq.*) and negligence (Docket No. 26). In the SAC, Plaintiff seeks statutory damages pursuant to Penal Code section 637.2, injunctive relief pursuant to Penal Code 637.2(b), and compensatory damages.

**Class Counsel's Investigation:**

10. My firm engaged in extensive discovery and investigation during the course of more than one year of litigation in preparing for a class certification motion and a motion for summary judgment. We took multiple depositions in Los Angeles, New York, and Dallas, and we prepared, served and reviewed written interrogatories, requests for admission, and numerous document production requests.

11. My firm has reviewed thousands of documents produced in connection with the litigation, engaged in extensive research and inquiry with respect to the claims asserted in the Action, and has vigorously litigated the matter on behalf of the class.

12. Our investigation revealed that BMW hired ATX to implement the BMW Assist program it offers in its automobiles. For quality assurance purposes, approximately 99% of all calls with the BMW Assist service – either through a

vehicle's wireless telephone connection or via a call to the BMW Assist toll-free phone number – are recorded. Prior to the commencement of this lawsuit, callers were provided no contemporaneous verbal disclosure that their calls would be recorded, which Plaintiff contends violates the laws at issue in his SAC.

13. Without admitting liability, shortly after the commencement of this action, ATX began to provide a verbal disclosure to all callers to the BMW Assist service at the outset of their calls that the call may be recorded or monitored. Notwithstanding these changes, Defendants assert numerous defenses to both certification and the merits of Plaintiff's and class members' claims, including but not limited to defenses based on disclosures and authorizations contained in the Subscription Agreement required to receive BMW Assist Services and on the BMW Assist website and that the drafters of the applicable statutes did not intend them to govern the types of conduct Plaintiff's allege.

**Settlement Discussions:**

14. Following extensive discovery and assessment of the risks involved in further litigation, the Parties engaged in pre-certification settlement discussions, which included a formal mediation session on April 25, 2011 with the Honorable George P. Schiavelli, United States District Judge, Retired. The mediation session did not result in a settlement, and litigation continued.

15. On or about May 13, 2011, Plaintiff filed his motion for class certification. The Parties requested, and the Court approved, several continuances of the hearing on this motion so the Parties could attempt to negotiate a resolution prior to the ruling on Plaintiff's motion for class certification. We recognized that if Plaintiff did not prevail on this motion, few – if any – class members would ever pursue individual claims based on allegations of the Action, because of both the novelty and surreptitious nature of the alleged privacy violations.

16. Recognizing the substantial risks to all Parties on a ruling on Plaintiff's motion for class certification, the Parties agreed to participate in a second mediation

session on September 27, 2011 with the Honorable Stephen E. Haberfeld, United States Magistrate Judge, Retired. Again, no agreement to resolve the case was reached. Litigation and settlement discussions continued.

17. Following lengthy and intensive negotiations, on or about November 10, 2011, the Parties reached an agreement in principle to resolve the entire action (excluding terms regarding payment of Plaintiff's counsel's attorneys' fees and costs, and Plaintiff's service payment, which were subsequently negotiated and agreed to in January 2012.

18. The Settlement Agreement and Release, entered into on January 24, 2012, embodies a comprehensive resolution of all claims encompassed in the Action. A true and correct copy of the Settlement Agreement and Release is attached hereto as **Exhibit A**. This Settlement Agreement and Release sets forth all terms of the agreement reached by the Parties.

**Evaluation of the Fairness of the Settlement:**

19. Based upon the discovery completed thus far and the nature of the claims alleged, neither Plaintiff Skuro, nor any other Class Member, has suffered actual damages as a result of the conduct alleged in the lawsuit. In fact, it is suspected that few – if any – Class Members even realize they have been subject to the harm alleged on their behalf. Based on this analysis, whatever Class Members receive will be nothing short of a windfall in exchange for the release of claims which they do not know they have.

20. However, the purpose of the relevant laws – to discourage the surreptitious recording of telephone calls – will be advanced by this Settlement in several ways. The Defendants have not only changed their business practices by agreeing not to record telephone calls in the future without full verbal disclosure going forward, but they are providing a common fund and valuable service benefits to compensate Class Members.

21. Defendants' defenses to certification and liability are an important basis for validating the reasonableness of the settlement amount. BMW and ATX have consistently maintained that they have ample legal and factual grounds for defending this action on both class and merits issues.

22. Perhaps Defendants' strongest defense was Plaintiff's and Class Members' purported knowledge of, and consent to, their call recording. Defendants contend that each and every Class Member was provided with, and bound by, a subscription agreement which adequately disclosed that calls with the BMW Assist service would be recorded. There is no published opinion which addresses whether such a written disclosure satisfies the notice requirements of *Penal Code* § 630 *et. seq.* If it does, Plaintiff's claims would be defeated in their entirety.

23. Defendants also argue that, based on the arbitration provision found in BMW Assist user subscription agreements, and several recent Supreme Court decisions, Plaintiff should be compelled to arbitrate his claims individually, with no class relief available. This would defeat Class Members' claims in their entirety and potentially leave them without any recourse due to the surreptitious nature of the privacy violations alleged. Defendants also opposed certification on other grounds, including the difficulty of ascertaining the identity of class members without listening to each and every telephone call.

24. Defendants further contend that, despite Plaintiff's claim for statutory damages of $5,000 per Class Member, Plaintiff and Class Members are limited to damages in the amount of the price they paid for their BMW Assist service (in the case of new car purchases – such as Plaintiff – nothing), based on a damage limitation provision in the BMW Assist subscription agreement. If Defendants prevailed on this argument, this would effectively defeat the vast majority of the value in Plaintiff's claim. Considering the risk that the Class would not be certified and that Plaintiff would not succeed at trial (or that a substantial judgment in the class' favor would be

reduced after trial), the present settlement represents an excellent compromise of Plaintiff's claims.

25.  In considering the reasonableness of this settlement, Plaintiff was also keenly aware of the doctrine of annihilating damages and its potential impact on a class certification ruling. Several courts in the Central District of California have denied class certification of cases when the potential damage exposure following certification could potentially be so large that it would be "annihilating" to the Defendant.

26.  With respect to liability on the merits, Defendants argued that even if class certification was granted and even if Plaintiff prevailed at trial, any potential damage award would almost certainly be reduced through the Court's equitable powers. The Settlement is a compromise which accounts for this risk.

27.  Plaintiff, however, argued in favor of certification on numerous bases, including the fact that the alleged violations here were secret, class members did not know their telephone calls were being violated, and as a result, a class action was the only possible manner (e.g. it was superior to other forms of adjudication) by which to litigate these claims.

28.  Our firm has litigated several other class actions related to the privacy claims alleged here. I am familiar with several other settlements of similar claims. Based on my experience, I believe the value of the $300,000 non-reversionary fund (excluding entirely the substantial value of the BMW Assist service benefit) is commensurate with the net settlement value (after deductions for attorneys' fees, costs, and administration expenses, if applicable) of these other settlements on a per class member basis, as shown below. Note that all numbers are estimates based solely on publicly-accessible information; we have made some assumptions for information *not* publicly available:

\\

| Case Name | Case No. | Net Settlement Amount | Total Class Members | Settlement Amount per Class Member |
|---|---|---|---|---|
| Batmanghelich v Sirius XM Radio | CV09-9190 VBF (C.D. Cal.) | $7,000,000 | 3,500,000 | $2.00 |
| Greenberg v. E*Trade | L.A. Sup. Ct. BC360152 | $5,625,000 | 1,400,000 | $4.02 |
| Marenco v Visa | CV10-08022 DMG (C.D. Cal.) | $13,000,000 | 648,000 | $20.06 |
| Cohorst v. BRE Properties | CV10-02666 (S.D. Cal.) | $3,500,000 | 1,170,000 | $2.99 |
| **Skuro v. BMW, ATX** | **CV10-8672 GW (C.D. Cal.)** | **$300,000** | **43,000** | **$6.98** |

Adding in the value of the service benefit, the total compensation per-class member here is approximately $107 – a well above "average" result.

29. Considering the risk that the Class would not be certified and that Plaintiff would not succeed at trial (or that a substantial judgment in the class' favor would be reduced after trial), the present settlement represents an excellent compromise of Plaintiff's claims.

**Suitability of the Action for Class Certification:**

30. To date, no class has been certified. The Settlement Stipulation reached among the Parties contains a provision pursuant to which we stipulate to the Court's provisional certification of the Settlement Class, but do so for purposes of this settlement only.

31. As proposed Class Counsel, and based on the discovery to date, I am confident that Plaintiff could successfully prove that this action meets the requirements of class certification under Rule 23.

32. The Settlement Class is numerous. The class contains approximately 43,000 members. Therefore, joinder of individual claims would be impractical and the numerosity requirement is satisfied for settlement purposes only.

33. Commonality is satisfied here because the Settlement Class Members all seek the same remedies under identical state laws under the same theories of recovery, all relating to the surreptitious recording of telephone conversations. The same factual predicates apply to each and every Class Member. The Settlement compensates Class Members for these identical claims.

34. Here, Plaintiff Skuro's claims are not only typical of those of all Class Members – they are identical. Plaintiff alleges his telephone conversations with Defendants were recorded without adequate notice or consent. This is the same claim alleged on behalf of all Class Members.

35. Plaintiff is an adequate class representative. Plaintiff Sean Skuro has interests directly aligned with all Class Members and has prosecuted this case on their behalf for an extended period. He has no apparent conflicts with Class Members. He has demonstrated his commitment to prosecute this Action on their behalf through its conclusion.

36. Under the proposed Settlement, Mr. Skuro will request a small service payment – $10,000 – for his significant time and efforts, including sitting for his deposition and assisting Class Counsel with factual issues surrounding the case. This award represents about one-fifth of one percent of the total value of the settlement consideration, and therefore does not constitute a sufficient conflict of interest to foreclose fulfilling the adequacy requirement

37. Plaintiff Skuro's chosen counsel are qualified to act as Class Counsel in this litigation. Additionally, Plaintiff's counsel are highly experienced litigators, with more than five decades of collective litigation experience. As evidenced by this declaration as well as the concurrently filed declarations of Kenneth S. Gaines and Alex P. Katofsky, filed herewith, each has substantial experience prosecuting

complex class action cases, both in the consumer and employment contexts. As such, there is no conflict of interest between the Named Plaintiff, proposed Class Counsel, and the Settlement Class Members, and the adequacy element is met.

38. With respect to the predominance inquiry required under Rule 23(b)(3), the proposed Settlement Class is sufficiently cohesive because all Settlement Class Members share a common nucleus of facts and potential legal remedies – the same facts and law govern their claims; this Court could try their claims in representative fashion by common evidence regarding Plaintiff's and Class Members' claims, and identical law applies. All of the Settlement Class Members seek damages based on the same allegations. As a result, common questions of law and fact predominate here.

39. Class treatment is a superior method to try this case. Perhaps the most persuasive argument in favor of the superiority of class treatment here is the surreptitiousness of the alleged violations by Defendants; were a class not certified, many (if not all) Class Members would not bring claims for the violations alleged, because few (if any) know their calls were recorded: Defendants' alleged unlawful conduct, by its very nature, is secret. As a result, class treatment is a superior method for adjudicating these claims, and a class action is the preferred method of resolution.

**Class Counsel's Attorneys' Fees and Costs:**

40. The Settlement provides that Plaintiff's counsel may request up to $550,000 as an award of attorneys' fees, representing approximately 10% of the total value of the settlement consideration, in recognition of the time and effort we have expended for the benefit of Plaintiff and Settlement Class Members   In addition, the Settlement provides that Plaintiff's counsel may request up to $15,000 in reimbursement of litigation costs actually and reasonably incurred during the course of this litigation. All attorneys' fees and costs awarded following a further motion by Plaintiff's counsel at the final approval stage shall be borne exclusively by

Defendants separate and apart from all other payments and services they are obligated to provide by the Settlement.

42. This Court can appreciate that litigating a high stakes case against large corporate defendants represented by some of the nation's most respected law firms in an undeveloped and evolving area of law is not appealing to most lawyers, particularly when the plaintiff's lawyer will have to finance the litigation. This case was taken solely on a contingency basis and is not a case undertaken lightly. The risk of advancing substantial costs in this type of litigation can be very high.

42. Class Counsel has spent hundreds of hours to date litigating the case and bringing it to fruition. Counsel expects to spend several hundred additional hours through a comprehensive and extensive notice and claims program and final approval process. Class Counsel has aggressively litigated this case from the start.

43. Even with my experience litigating complex cases, prosecuting these cases still carries a considerable amount of risk. The greatest early risk involves the discretionary class certification decision. Other risks abound depending on the circumstances of each case.

44. My experience in class actions, as well as my review of fee awards in other similar class actions, supports my conclusion that the fee request is in line with – if not below – the Ninth Circuit benchmarks. Any attorneys' fee awards are subject to this Court's approval at the Final Approval Hearing upon a formal noticed motion.

45. Finally, the Settlement Stipulation provides that Class Counsel will seek to recover litigation costs of no more than $15,000. At the final approval stage, Class Counsel will submit itemized statements of costs incurred to the Court for its approval.

**The Proposed Class Notice Is Appropriate:**

46. The Class Notice, attached as Exhibit "1" to the Stipulation of Settlement, is intended to apprise all Class Members of the litigation and their right to claim a share of the cash portion of the settlement, elect the service benefit, (or opt-

DECLARATION OF DANIEL F. GAINES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  out of/object to it). The proposed notice meets the standards set forth in Rule
2  23(c)(2)(B) for classes certified under Rule 23(b)(3). Defendants have last known
3  addresses for all Class Members, each of which currently or formerly subscribed to
4  the BMW Assist service. Notice shall be provided by U.S. first class mail.

5  I declare, under penalty of perjury of the laws of the United States, that the
6  foregoing is true and correct. Executed this 24th day of January 2012 at Woodland
7  Hills, California.

8
9                           /s/ Daniel F. Gaines
10                          DANIEL F. GAINES

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DECLARATION OF DANIEL F. GAINES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT