KENNETH S. GAINES, ESQ. SBN 049045
ken@gaineslawfirm.com
DANIEL F. GAINES, ESQ. SBN 251488
daniel@gaineslawfirm.com
ALEX P. KATOFSKY, ESQ. SBN 202754
alex@gaineslawfirm.com
**GAINES & GAINES, APLC**
21550 Oxnard Street, Suite 980
Woodland Hills, CA 91367
Telephone: (818) 703-8985
Facsimile:  (818) 703-8984

Attorneys for Plaintiff
SEAN SKURO and Class Counsel

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SEAN SKURO, on behalf of himself and all others similarly situated, and on behalf of the general public,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>BMW OF NORTH AMERICA, LLC, A Delaware Limited Liability Company, ATX GROUP, INC., A Texas Corporation, and DOES 1 through 50, inclusive,<br><br>　　　　Defendants. | CASE NO.:  CV 10-8672-GW (FFMx)<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**DATE:**  August 27, 2012<br>**TIME:**  8:30 A.M.<br>**COURTROOM:** 10<br>**JUDGE:**  Hon. George H. Wu |

1

**TO THE COURT AND TO ALL PARTIES:**

2

PLEASE TAKE NOTICE that on August 27, 2012 at 8:30 a.m., in Courtroom

3

10 of the above-entitled Court, located at 312 N. Spring Street, Los Angeles,

4

California 90012, Plaintiff Sean Skuro will, and hereby does, move this Court for an

5

order granting final approval of the class action settlement in this Action.  This

6

motion is unopposed by Defendants.

7

This motion will be based on this Notice and accompanying Memorandum of

8

Points and Authorities, the Declarations of Daniel F. Gaines, Kenneth S. Gaines,

9

Alex P. Katofsky and Stephen H. Krumm, the Declaration of Class Representative

10

Sean Skuro, the Declaration of Markham Sherwood of Gilardi & Co., LLC, the

11

Stipulation of Settlement and Release (including exhibits), all filed herewith, and on

12

such further evidence and argument as may be presented at the hearing.

13

DATED:  July 20, 2012                    Respectfully submitted,

14

GAINES & GAINES,

15

A Professional Law Corporation

16

17

By:  __/s/  Kenneth S. Gaines_____

18

KENNETH S. GAINES

DANIEL F. GAINES

19

ALEX P. KATOFSKY

20

Attorneys for Plaintiff SEAN SKURO

and Class Counsel

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................1

II.     FACTUAL BACKGROUND ....................................................................3

III.    SUMMARY OF THE SETTLEMENT TERMS ......................................5

     A.    The Settlement Class .....................................................................5

     B.    Settlement Consideration ..............................................................6

          1.    Payment to Plaintiff and Class Members ...........................6

          2.    Attorneys' Fees and Costs to Class Counsel ......................6

     C.    The Release by Plaintiff and Class Members ................................6

IV.    THE COURT-APPROVED NOTICE PROGRAM....................................7

V.     ARGUMENT............................................................................................8

     A.    The Class Members Received the Best Practicable Notice ...................8

     B.    Final Settlement Approval is Warranted.......................................10

          1.    Each of the Relevant Criteria Supports Final Approval...11

               a.    The Strength of Plaintiff's Case Turns on an Untested Area of Law Creating Significant Risks to Plaintiff and Class Members ..........................................................12

               b.    The Complexity, Expense and Likely Duration of Continued Litigation Weighs in Favor of Final Approval ....................................................................13

               c.    The Risk of Maintaining Class Action Status Through Trial ........................................................................14

               d.    The Value of the Settlement Favors Final Approval ..14

               e.    Disclosure of Documents and Data Demonstrating the Strengths and Weaknesses of this Action was Completed Prior to Entering into the Settlement ..........................17

               f.    The Experience and Views of Counsel Favor Final Approval ....................................................................18

               g.    The Presence of a Governmental Participant .............19

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1
2

# TABLE OF CONTENTS
(continued)

3
4

        h.  Class Members' Positive Reaction to the Settlement Favors Final Approval...................................................19

5

C.     Final Class Certification is Appropriate................................................20

6
7

      1.     FRCP 23(a) Requirements For Class Certification Are Met................................................................................20

         a.  Numerosity.................................................................20

8

         b.  Commonality ............................................................20

9

         c.  Typicality ..................................................................21

10

         d.  Adequacy of Representation.....................................22

11
12

      2.     FRCP 23(b)(3) Requirements For Class Certification Are Met ...............................................................................23

13

         a.  Predominance............................................................23

14

         b.  Superiority ................................................................24

15

D.     Defendants Have Provided Notice to the Attorney Generals Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ..................................24

16

VI.    CONCLUSION ..............................................................25

17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

## Federal Statutes

28 U.S.C. § 1332(d) ...................................................................................... 2, 24

28 U.S.C. § 1715 .............................................................................................. 24

Fed. R. Civ. P. 23 ........................................................................................ passim

## California Statutes

California Civil Code section 1542 ................................................................... 7

California Civil Code section 1781 ................................................................... 9

California Penal Code, section 630 *et seq.* ................................................. 3, 15

California Penal Code, section 632. ....................................................... 7, 10, 12

California Penal Code section 637.2 ............................................................ 3, 15

## Federal Cases

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) .................................................................................. 23

*Bateman v. American Multi-Cinema, Inc.,*
    623 F.3d 708 (9th Cir. 2010) ................................................................... 16

*Churchill Village, L.L.C. v. GE,*
    361 F.3d 566 (9th Cir. 2004) ................................................................. 3, 8

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ................................................................. 10

*Cox v. American Cast Iron Pipe,*
    784 F.2d 1546 (11th Cir. 1986) .......................................................... 20, 23

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) .................................................................................. 8

# TABLE OF AUTHORITIES
(continued)

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980) ..................................................................18

*Franklin v. Kaypro,*
    884 F.2d 1222 (9th Cir. 1989) ....................................................................8

*Gen. Tel. Co. of the SW v. Falcon,*
    457 U.S. 147 (1982) ...................................................................................21

*Griffin v. Carlin,*
    755 F.2d 1516 (11th Cir. 1985) ................................................................22

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ............................................................passim

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ....................................................................22

*In re Bluetooth Headset Products Liability Litigation,*
    654 F.3d 935 (9th Cir. 2011) ......................................................................6

*In re Corrugated Container Antitrust Litig.,*
    643 F.2d 195 (5th Cir. 1981) ....................................................................14

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ....................................................................12

*In re Omnivision Technologies, Inc.,*
    559 F.Supp.2d 1036 (N.D. Cal. 2008) ......................................................22

*Kline v. Coldwell, Banker & Co.,*
    508 F.2d 226, 234-35 (9th Cir. 1974) .......................................................17

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) ..................................................................11

*Linney v. Cellular Alaska P'ship,*
    Nos. C-96-3008 DLJ, C-97-0203 DLJ, C-97-0425 DLJ, C-97-0457 DLJ, 1997
    WL 450064 (N.D. Cal. July 18, 1997) .....................................................12

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES
(continued)

*Mullane v. Central Hanover Bank & Garretson Company,*
    339 U.S. 306 (1950) .................................................................9

*Najarian v. Avis Rent a Car Sys.,*
    No. CV 07-0588, 2007 U.S. Dist. LEXIS 59932
    (C.D. Cal. June 13, 2007) ......................................................16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ...........................................12

*Officers for Justice v. Civ. Serv. Comm'n of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) .................................................13

*Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*
    323 F.Supp. 364 (E.D. Pa. 1970)...........................................9

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ...............................................................8

*Ratner v. Chemical Bank NY Trust Co.,*
    54 F.R.D. 412, 416 (S.D.N.Y. 1972)......................................17

*Soualian v. Int'l Coffee & Tea LLC,*
    No. CV 07-0502, 2007 US. Dist. LEXIS 44208 (C.D. Cal June 11, 2007)....16

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993).............................................11, 12

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976)...........................................8, 10

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ..........................................................20

*Young v. Katz,*
    447 F.2d 431(5th Cir. 1971) ..................................................13

# TABLE OF AUTHORITIES
(continued)

## California Cases

*AT&T Mobility LLC v. Concepcion,*
    131 S.Ct. 1740 (2011) ........................................ 16

*Cartt v. Superior Court,*
    50 Cal.App.3d 960 (1975) .................................... 9

*Clark v. American Residential Services, LLC,*
    175 Cal.App.4th 785 (2009) ............................... 18

*Dunk v. Ford Motor Co.,*
    48 Cal.App.4th 1794 (1996) .......................... 18, 20

*Kearney v. Solomon Smith Barney,*
    39 Cal.4th 95 (2006) .................................. 14, 17

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.,*
    130 S.Ct. 1758 (2010) ...................................... 16

## Treatises

4 Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions,* § 11.41 (4th ed. 2002) ................... 8, 10

Manual for Complex Litigation, Fourth,
    *§ 21.632- 34 (4th ed. 2004)* ............................... 10

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION**

Plaintiff Sean Skuro ("Plaintiff" or "Skuro"), on behalf of himself and others similarly situated, and Defendants BMW of North America, LLC ("BMW") and Agero Connected Services, Inc., f/k/a ATX Group, Inc. ("ATX")[1] (collectively, "Defendants"), seek final approval of their class action settlement.  This motion follows a successful settlement administration authorized by the Court's March 12, 2012 Order Granting Preliminary Approval of Class Action Settlement.  (Docket No. 50).

Subject to final Court approval, Plaintiff has settled his claims and those of the approximately 43,000 Class Members for a total settlement package consisting of up to approximately $4.3 million in BMW Assist telematics services and $300,000 in cash payments to Class Members.  The free telematics service entitles Class Members to now obtain for free what they previously had paid for.

In addition to the cash consideration payable to Class Members, the Defendants have also agreed to not oppose an attorney's fee application by Class Counsel (as approved and awarded by the Court), not to exceed $550,000, litigation costs to Class Counsel as awarded by the Court, not to exceed $15,000, settlement administration expenses to Gilardi & Co., the Court-appointed settlement administrator (totaling approximately $90,000), and a service payment to the Representative Plaintiff as awarded by the Court, not to exceed $10,000.

No portion of the cash component of the settlement payment (the $300,000 fund) shall revert to Defendants.  If not all of it is claimed, the balance will be distributed to a worthy charitable organization, as detailed herein.

In addition, the Defendants have agreed to and, in fact, have already, modified

_____

[1] During the pendency of this litigation, ATX Group, Inc. changed its name to Agero Connected Services, Inc.

their allegedly unlawful behavior.

By a separate motion filed concurrently, Plaintiff moves for an award of attorneys' fees and costs and approval of the Class Representative's service payment.

Following a comprehensive notice program through which notice was sent by U.S. Mail to approximately 43,000 Class Members[2], approximately 6,976 Class Members have filed a claim for payment from the $300,000 fund or for the extension of service.[3,4]  Based on the valid submissions thus far, if the Settlement receives final approval, approximately 4,147 Class Members shall be paid $50 each from the Non-Reversionary Fund and approximately 2,829 Class Members shall receive six months of extended or enhanced BMW Assist service benefit.  Declaration of Markham Sherwood of Gilardi & Co., LLC ("Sherwood Decl.") at ¶ 12; Declaration of Daniel F. Gaines Decl. ("Gaines Decl.") at ¶ 18.  These are substantial sums.

The unclaimed portion of the $300,000 fund (approximately $91,000) shall be paid to Big Brother/Big Sister of America, a charitable organization designated by the Parties in the Settlement Agreement.[5]  *See* Ex. "A" to the Gaines Decl. ("Settlement Agreement" or "Stip") at ¶ I.24.

Notably, of over 43,000 Class Members, only 19 individuals have opted-out of the settlement and, through the date of filing of this motion, not one class member has submitted an objection to it.[6] Sherwood Decl. at ¶¶ 13-14.

---

[2] Notice packets were actually mailed to about 50,000 *potential* Class Members – see footnote 7 below.

[3] Class Members had 60 days from the date notice was mailed to by the Claims Administrator – July 10, 2012 – to either file a claim to receive a payment from the Non-Reversionary Fund or submit a Subscription Agreement Addendum to obtain a service benefit.  (Docket No. 47-1.) .

[4] Approximately 10% of participating Class Members submitted more than one claim form or subscription agreement addendum (or both) based on multiple qualifying calls.

[5] California Code of Civil Procedure section 384(b) permits the unpaid residue in a class action to be paid to "child advocacy programs."  The parties submit that Big Brother/Big Sister of America administers such a program.

[6] The opt-out deadline was July 10, 2012.  Class Members have until August 3, 2012 to submit an objection to the Settlement.

The proposed Settlement satisfies all of the criteria for final settlement approval under federal law because it is fair, adequate, and reasonable. S*ee Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 575-76 (9th Cir. 2004).  The positive response of the Class Members to the Settlement, minimal opt-outs, and zero objections – provides strong support that final settlement approval is appropriate.

Because the Settlement provides a valuable benefit to Class Members and future users of the BMW Assist service, Plaintiff requests that the Court approve the Settlement as fair, adequate, and reasonable, and enter judgment accordingly.

## II.    <u>FACTUAL BACKGROUND</u>

On October 13, 2010, Plaintiff filed a Class Action Complaint against BMW in the Los Angeles Superior Court, which was removed pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  In his Complaint (later amended), Plaintiff alleges that BMW and ATX surreptitiously recorded confidential telephone calls with subscribers to the "BMW Assist" program without their knowledge or consent.  The original Complaint alleged a violation of California Penal Code, section 630 *et. seq.*, among other claims, and sought statutory damages pursuant to California Penal Code § 637.2 of $5,000 for each unlawful recording.  Gaines Decl. at ¶ 7.

Shortly after removal, Plaintiff learned that BMW had a contract with the telematics services provider ATX, which handled the allegedly objectionable communications with Class Members.  ATX was subsequently named as a defendant.  Gaines Decl. at ¶ 8.

Plaintiff filed the First Amended Complaint ("FAC") on November 17, 2010, asserting claims for invasion of privacy (violations of California Penal Code section 630 *et. seq.*) and negligence against BMW and ATX.  In the FAC, Plaintiff sought statutory damages pursuant to Penal Code section 637.2, injunctive relief pursuant to Penal Code 637.2(b), and compensatory damages.  Gaines Decl. at ¶ 9.

Thereafter, the parties engaged in extensive formal and informal discovery, including multiple depositions in Los Angeles, Dallas, and New York, multiple sets

of interrogatories, requests for admissions, and numerous document production requests.  Plaintiff's counsel has reviewed thousands of documents produced in connection with the litigation, engaged in extensive research and inquiry with respect to the claims asserted in the Action, and have vigorously litigated the matter on behalf of the class, first in contemplation of a class certification motion and, subsequently, in connection with the settlement.  Gaines Decl. at ¶ 10.

The facts are clear.  BMW hired ATX as its telematics service provider to implement the BMW Assist program for its vehicles.  Although Defendants recorded nearly all Class Members' phone communications, Plaintiff contends they failed to notify customers through a contemporaneous verbal disclosure that their telephone conversations were being recorded.  Defendants, for their part, contend that they complied with all applicable laws and notice requirements because Plaintiff was provided with actual notice through the BMW Assist written subscription agreements, the BMW Assist website, and warranty materials that calls may be recorded.  Shortly after filing suit, Defendants began providing contemporaneous oral notification to all customers that their telephone calls were being recorded.  Gaines Decl. at ¶ 11.

Following extensive discovery and assessment of the risks involved in further litigation, the Parties engaged in pre-certification settlement discussions, which included a formal mediation session on April 25, 2011 with the Honorable George P. Schiavelli, United States District Judge, Retired.  The mediation session did not result in a settlement, and litigation continued.   On or about May 13, 2011, Plaintiff filed his motion for class certification.  The Parties requested, and the Court approved, several continuances of the hearing on the motion so the Parties could attempt to negotiate a resolution.  Plaintiff recognized that if he did not prevail on this motion, few – if any – class members would ever pursue individual claims based on allegations in the Action, because of both the novelty and surreptitious nature of the alleged privacy violations.  Gaines Decl. at ¶ 12.

1    Recognizing the substantial risks to all Parties on a ruling on Plaintiff's motion

2    for class certification, the Parties agreed to participate in a second mediation session

3    on September 27, 2011 with the Honorable Stephen E. Haberfeld, United States

4    Magistrate Judge, Retired.   Again, no agreement to resolve the case was reached.

5    Litigation and settlement discussions continued.  Gaines Decl. at ¶ 13.

6    Following lengthy and intensive negotiations, on or about November 10, 2011,

7    the Parties reached an agreement in principle to resolve the entire action (excluding

8    terms regarding payment of Plaintiff's counsel's attorneys' fees and costs, and the

9    Named Plaintiff's service payment, which were subsequently negotiated and agreed

10   to in January, 2012.  Gaines Decl. at ¶ 14.

11   The Parties moved the Court for preliminary approval of their settlement on

12   February 23, 2012 (*see* Docket No. 44), and the Court entered its order granting

13   preliminary approval of the settlement on March 12, 2012 (Docket No. 50, Ex. "B" to

14   Gaines Decl.), following the submission of supplemental explanation and revised

15   documents and two hearings.  Gaines Decl. at ¶ 15.

16   The Settlement Agreement and Release, attached to the Gaines Declaration as

17   Exhibit "A," embodies a comprehensive resolution of all claims encompassed in the

18   Action.  Gaines Decl. at ¶ 14.

19   **III.      SUMMARY OF THE SETTLEMENT TERMS**

20   The Settlement's significant terms are set forth below.

21   **A.     The Settlement Class**

22   The Settlement Class is defined as: "Individuals who connected to BMW

23   Assist between October 13, 2009 and February 1, 2011 through BMW Assist

24   subscription accounts with California billing addresses" ("Class Members").  See,

25   Stip.

26   \\

27   \\

28   \\

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## B.   Settlement Consideration

### 1.   Payment to Plaintiff and Class Members

The Defendants have agreed to (1) establish a non-reversionary fund valued at $300,000 to pay Class Members who choose to make claims up to $50 each, and (2) provide Class Members who choose to submit a subscription agreement addendum with 6 months of extended (or enhanced) BMW Assist service, valued at $100 per Class Member (based on a retail value of $199 per year).  Each class member may choose whether to accept the cash option or the service option.  If the cash fund is not exhausted by the value of the claims made, the balance shall be paid to Big Brother/Big Sister of America.

### 2.   Attorneys' Fees and Costs to Class Counsel

The Settlement provides that Plaintiff's counsel may request, and Defendants will pay, up to $550,000 for Class Counsel's attorneys' fees.  This represents approximately 10.5% of the $5,265,000 "constructive common fund" obtained through the Settlement.[7]  Further, the Settlement provides that Plaintiff's counsel may request up to $15,000 in reimbursement of litigation costs actually and reasonably incurred during the course of this litigation.  Any portion of the attorneys' fees and costs not requested and/or not awarded shall not be paid by Defendants.

## C.   The Release by Plaintiff and Class Members

The release, to which all Class Members (except for those who submit a valid and timely request for exclusion) will be bound, releases Defendants from any and all claims related to the events that are the subject of this Action, in particular claims related to the recording and/or monitoring of telephone calls.  The release includes a

---

[7] This expression, discussed by the Ninth Circuit in *In re Bluetooth Headset Products Liability Litigation* 654 F.3d 935 (9th Cir. 2011), measures the maximum value of the settlement obtained (e.g. $100 service benefit x 43,000 Class Members, plus $300,000 fund, plus approximately $90,000 in settlement administration expenses, plus the $10,000 service payment, $15,000 attorney costs, and $550,000 attorneys' fees Defendants have agreed to pay under the Settlement [subject to the Court's approval].)

narrow waiver of *Cal. Civil Code* § 1542 with respect to these released claims.  Stip. at ¶ VIII.A.

## IV.        THE COURT-APPROVED NOTICE PROGRAM

The notice program approved by the Court in its March 12, 2012 preliminary approval order was administered by Gilardi & Co., LLC, the Court-appointed settlement administrator chosen by the parties and confirmed by the Court ("Gilardi").  A comprehensive explanation of the notice program and its success – including its compliance with the Settlement Agreement and the Court's Order – is detailed in the Sherwood Declaration.

According to Mr. Sherwood, of 43,000 potential Class Members (based on Defendants' customer records), approximately 99% ultimately received notice by mail.[8,9]

Through the date of filing, 4,147 claim forms have been submitted and 2,829 subscription agreement addendums have been submitted.  There are only 19 opt-outs and there have been no objections.

In the scheme of consumer class action settlements, and class action settlements resolving claims under *Penal Code* § 632 in particular, the participation rate here is very, very high.  Gaines Decl. at ¶ 19.  Mr. Sherwood, who has extensive experience administering class settlements with automobile-related claims, states that this is a substantial participation rate among all the cases he has overseen the administration of.  Sherwood Decl. at ¶ 12.

---

[8] Per the Court's Order, notice was initially given on May 11, 2012.  Thereafter, on June 25, 2012, a reminder notice was sent by e-mail to all Class Members who had not to date submitted a claim form, subscription agreement addendum, or exclusion request.

[9] Markham's Declaration notes that notice was mailed to about 50,000 individuals; this number slightly exceeds the 43,000 number because some affected cars (1) have two owners registered concurrently, both of whom received notice, (2) connected to BMW Assist during the relevant time period with two different owners, or (3) had other unique issues resulting in more than one notice packet being generated and mailed based on a qualifying connection with BMW Assist.

# V.     <u>ARGUMENT</u>

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation. *See* 4 *Newberg* § 11.41 (and cases cited therein); *Churchill Village*, *supra,* 361 F.3d at 576 (noting "strong judicial policy" favoring settlements, provided they were reached through arms-length, non-collusive negotiations); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement); *Franklin v. Kaypro*, 884 F.2d 1222, 1227 (9th Cir. 1989) ("Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial…[t]he economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process."); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.")

## A.     The Class Members Received the Best Practicable Notice

To protect the rights of absent class members, the parties must provide class members with the best notice practicable of a potential class action settlement. Fed. R. Civ. P 23(c)(2); *Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 811-12; *Eisen v. Carlisle & Jacquelin* (1974) 417 U.S. 156, 175 (individual notice must be sent to all class members who can be identified through reasonable efforts); *Mullane v. Central Hanover Bank & Garretson Company* (1950) 339 U.S. 306, 314 (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). The content and method of the notice should be designed to apprise the class members of the terms of the proposed

settlement and of the class members' rights regarding the settlement.  *See Mullane*, *supra*, 339 U.S. at 314; *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.* (E.D. Pa. 1970) 323 F. Supp. 364, 378.

The Court is vested with broad discretion in fashioning an appropriate notice program.  *See Cal. Civil Code* § 1781; *Cartt v. Superior Court* (1975) 50 Cal.App.3d 960, 973-74.

The form of notice approved by the Court met these requirements:  it identified the Parties and described the lawsuit, the Class, the settlement amount and service terms, the proposed method for distribution of the settlement consideration, the amount proposed to be paid as a service payment to the Named Plaintiff, and the requested amount for attorneys' fees and costs.  *See* Sherwood Decl., Ex. A.  The Notice described the proposed Settlement with enough specificity to allow each Class Member to make an informed choice whether to accept and participate in it.  It also explained how and when Class Members may object to or opt out of the Settlement.  Finally, the Notice provided the schedule for the hearing on final approval of the Settlement and informed Class Members how to obtain additional information about the Settlement.  *Id.*

The California Supreme Court has held that notice is appropriate if it has a "reasonable chance of reaching a substantial percentage of the class members.…" *Cartt*, *supra*, 50 Cal.App.3d at 974.  Here, notice was mailed to each individual Class Member at that Class Member's last known physical address; approximately 99% of the potential Class Members received notice, apprising them of all pertinent information regarding the Settlement.  Sherwood Decl., ¶¶ 6-8, 11.  The notice given to the Class Members was comprehensive and more than adequate.  As Notice actually reached the vast majority of Class Members and apprised them of all pertinent information regarding the Settlement, the notice program complied with the requirements of the law.

Notice was also supplemented by the implementation of a web site,

www.bmwassistsettlement.com, which contains relevant settlement documents and the Court's preliminary approval order, as well as details about the settlement and contact information for the settlement administrator.   The claim form and subscription agreement addendum were also available on the website.   Sherwood Decl., ¶ 9.

### B.   Final Settlement Approval is Warranted

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *See* 4 *Newberg on Class Actions* 4th (4th ed. 2002) § 11.41 (and cases cited therein); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst, supra,* 529 F.2d at 950.  These concerns apply with particular force in a case such as this, where novel issues of law in untested, rarely litigated areas, are implicated.

Pursuant to Federal Rule of Civil Procedure 23(e), the Court must approve any proposed class action settlement.  Court approval of class action settlements requires the following steps:

(1)   Preliminary approval of the proposed settlement at a preliminary hearing;

(2)   Dissemination of mailed and/or published notice of the Settlement to all affected Class Members; and

(3)   A "formal fairness hearing," or final settlement approval hearing, at which Class Members may be heard regarding the Settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented.

*See Manual for Complex Litigation, Fourth* (4th ed. 2004) § 21.632-34.

The first two steps of this process are now complete.  The first step was completed in February and March 2012, when this Court conducted hearings and

entered an order granting preliminary approval of the Settlement.

As detailed in the Sherwood Declaration, and as described above, the notice program was engaged in accordance with the Court's preliminary approval order and conformed with accepted standards in notice administration.  Sherwood Decl. at ¶¶ 5-11.  In light of the broad individual notice achieved, the notice process was successful.  Gaines Decl., ¶ 19.

The last step in the class action settlement approval process is the final approval hearing, at which the Court shall finally conclude whether the Settlement is fair, adequate, and reasonable.  Fed. R. Civ. P. 23(e)(2).  At the final approval hearing Class Members will have the opportunity to be heard regarding the Settlement, and Class Counsel will present evidence and argument in support of the Settlement.  At the conclusion of the final approval hearing the Court will decide whether to grant final approval of the Settlement and whether to enter a final order and judgment thereon.

### 1.   Each of the Relevant Criteria Supports Final Approval

In the Ninth Circuit, a court must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable:

(1) the strength of the plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) the reaction of the class members to the proposed settlement.

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *accord Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Hanlon*, *supra*, 150

F.3d at 1026.  "In addition, the settlement may not be the product of collusion among the negotiating parties."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  These factors are not exclusive, and one factor may deserve more weight than the others depending on the circumstances.  *Torrisi*, *supra*, 8 F.3d at 1376.  In some instances, "one factor alone may prove determinative in finding sufficient grounds for court approval."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-26 (*citing Torrisi*, *supra*, 8 F.3d at 1376).

"The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Linney v. Cellular Alaska P'ship*, Nos. C-96-3008 DLJ, C-97-0203 DLJ, C-97-0425 DLJ, C-97-0457 DLJ, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d at 1234.

### a.  The Strength of Plaintiff's Case Turns on an Untested Area of Law Creating Significant Risks to Plaintiff and Class Members.

There is little published case law relating to the application of *Penal Code* § 632 in the class action context, including whether this claim is properly maintainable in class action form.  Defendants have advanced a number of potential defenses and have argued that the class would not be certified.

Defendants also argue that before a subscriber can receive BMW Assist service, they must sign a form by which they (1) agree to arbitrate any dispute[10], and (2) acknowledge that their phone calls with Defendants may be recorded.

---

[10] Based on the recent Supreme Court decisions in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S.Ct. 1758 (2010) and *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011), Defendants now argue that Plaintiff may be required to proceed through an individual arbitration only, with no class relief available.  Plaintiff opposes these arguments, but settlement at this juncture ensures absent Class Members will receive compensation for the claims alleged.

1    Plaintiff maintains that he would succeed at trial on a classwide basis.

2    Defendants contend otherwise.   Simply, there is uncertainty which supports the

3    Settlement as a fair and appropriate compromise.  Gaines Decl. at ¶¶ 25-26.

4         Further discussion on the risks Plaintiff faced in continued litigation is

5    detailed in section (d) below.

6         **b.    The Complexity, Expense and Likely Duration of**

7         **Continued Litigation Weighs in Favor of Final**

8         **Approval**

9         In determining whether a settlement warrants final approval, Courts consider

10   the complexity, expense, and likely duration of the litigation in the absence of

11   settlement.  *See Officers for Justice v. Civil Service Com'n of City and County of San*

12   *Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  In applying this factor, a court should

13   weigh the benefits of the settlement against the expense and delay involved in

14   achieving an equivalent or more favorable result at trial.  *See Young v. Katz*, 447 F.2d

15   431, 433 (5th Cir. 1971).

16        Consumer class action cases are expensive and time-consuming to litigate.

17   This case presents a more difficult situation than most, given the lack of legal

18   authority surrounding the interpretation of the Penal Code sections at issue in the

19   factual context of this case.  The presence of two potentially-liable defendants – and

20   two well-respected law firms representing them – would substantially increase the

21   potential complexity, expense, and duration of continued litigation if a settlement

22   were not reached.  Gaines Decl. at ¶¶ 63-64.

23        The Settlement also avoids the need for a contested class certification motion

24   that would be time consuming and costly for all parties.  In addition, if the Court

25   were to deny such a motion for class certification, Class Members would be left

26   without a group remedy, and the issues presented here – relatively small individual

27   claims from the onset – would need to be litigated individually in a piecemeal,

28   costly, and time-consuming fashion.  The Settlement also avoids a lengthy trial or

trials that likely would have involved testimony by numerous witnesses and experts. Gaines Decl. at ¶¶ 24, 26.

Extensive, complex litigation will also result in substantial financial risk to Class Members. Class actions are expensive to prosecute and costs – many of which are not recoverable in the event Plaintiff was to prevail at trial – can increase exponentially as litigation progresses. Efficient settlement here at a relatively early stage of litigation means a larger portion of the Settlement funds are paid out to Class Members. Gaines Decl. at ¶¶ 12, 20-21.

Even if Plaintiff prevailed on his class claims at trial, he faced the risk that the Court would reduce any potential damage award through its equitable powers. *See Kearney, supra,* 39 Cal.4th 95 (wherein the Supreme Court applied its equitable powers to reduce potentially substantial statutory damages to zero). Gaines Decl. at ¶ 32.

Based on these risks, settlement at this juncture on the agreed terms is appropriate.

### c.       The Risk of Maintaining Class Action Status Through Trial

If Plaintiff were to succeed on his class certification motion, the risk is always present that a class could later be decertified based on new law or facts which arise during the litigation. Settlement at this juncture avoids this risk. Gaines Decl. at ¶ 37.

### d.       The Value of the Settlement Favors Final Approval

Ultimately, a settlement should stand or fall on the adequacy of its terms. *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981).

The bases of the Class Members' claims are statutes and case law which render the recording of telephone conversations without the consent of all parties to the conversation tortious conduct. Gaines Decl. at ¶¶ 7, 20-21. The California Penal

Code provides for statutory damages of $5,000 per occurrence (*California Penal Code* § 637.2).

Based upon the discovery completed thus far and the nature of the claims alleged, neither Plaintiff Skuro, nor any other Class Member, has suffered actual damages as a result of the conduct alleged in the lawsuit.  In fact, it is suspected that few – if any – Class Members even realize they have been subject to the harm alleged on their behalf.  Based on this analysis, whatever Class Members receive will be nothing short of a windfall in exchange for the release of claims which they do not know they have.  Gaines Decl. at ¶ 20.

However, the purpose of the relevant laws – to discourage the surreptitious recording of telephone calls – will be advanced by this Settlement.  The Defendants, who dispute that they recorded any calls surreptitiously, have not only changed their business practices by agreeing that, to the extent California law is deemed to continue to so require, future telephone calls will not be recorded without providing a contemporaneous verbal disclosure that calls may be recorded, but they are providing a common fund and valuable services to compensate Class Members.  Stip. at ¶ III.D; Gaines Decl. at ¶ 21.

Defendants' defenses to certification and liability are an important basis for validating the reasonableness of the settlement amount.  BMW and ATX have consistently maintained that they have ample legal and factual grounds for defending this action on both class and merits issues.  Gaines Decl. at ¶ 22.

Perhaps Defendants' strongest defense was Plaintiff's and Class Members' purported knowledge of, and consent to, their call recording.  Defendants contend that each and every Class Member was provided with, and bound by, a subscription agreement which adequately disclosed that calls with the BMW Assist service would be recorded.  There is no published opinion which addresses whether such a written disclosure satisfies the notice requirements of *Penal Code* § 630 *et. seq.*  If it does, Plaintiff's claims would be defeated in their entirety.  Gaines Decl. at ¶ 28.

1       Defendants also argue that, based on the arbitration provision found in BMW

2  Assist user subscription agreements, and the Supreme Court's recent decisions in

3  *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S.Ct. 1758 (2010) and

4  *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011), Plaintiff should be

5  compelled to arbitrate his claims individually, with no class relief available.   This

6  would defeat Class Members' claims in their entirety and potentially leave them

7  without any recourse due to the surreptitious nature of the privacy violations alleged.

8  Gaines Decl. at ¶ 29.

9       Defendants further contend that, despite Plaintiff's claim for statutory damages

10  of $5,000 per Class Member, Plaintiff and Class Members are limited to damages in

11  the amount of the price they paid for their BMW Assist service (in the case of new

12  car purchases – such as Plaintiff – nothing), based on a damage limitation provision

13  in the BMW Assist subscription agreement.   If Defendants prevailed on this

14  argument, this would effectively defeat the vast majority of the value in Plaintiff's

15  claim.  Gaines Decl. at ¶ 30.

16      In considering the reasonableness of this settlement, Plaintiff was also keenly

17  aware of the doctrine of annihilating damages and its potential impact on a class

18  certification ruling.  Several courts in the Central District of California have denied

19  class certification of cases when the potential damage exposure following

20  certification could potentially be so large that it would be "annihilating" to the

21  Defendant.  *See Najarian v. Avis Rent a Car Sys.*, No. CV 07-0588, 2007 U.S. Dist.

22  LEXIS 59932 (C.D. Cal. June 13, 2007); *Soualian v. Int'l Coffee & Tea LLC*, No. CV

23  07-0502, 2007 US. Dist. LEXIS 44208 (C.D. Cal June 11, 2007).  Although the Ninth

24  Circuit partially rejected the reasoning in these cases (*see Bateman v. American

25  Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010)), it still left open the possibility that

26  the annihilating damages doctrine could bar certification.  *See* Gaines Decl. at ¶ 31.

27      With respect to liability on the merits, Defendants argued that even if class

28  certification was granted and even if Plaintiff prevailed at trial, any potential damage

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

award would almost certainly be reduced through the Court's equitable powers (*see Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006) [wherein the Supreme Court applied its equitable powers to reduce substantial statutory damages to zero]). Gaines Decl. at ¶ 32.  Defendants' maximum exposure here was hundreds of millions of dollars – with no actual harm to any Class Member.  *See id.*; *see also Ratner v. Chemical Bank NY Trust Co.*, 54 F.R.D. 412, 416 (S.D.N.Y. 1972); *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 234-35 (9th Cir. 1974) (reversing the trial court's certification of an antitrust action involving 400,000-800,000 transactions and damages of more than $250 million, finding that class treatment was not superior as it would subject the defendants to "staggering damages" disproportionate to the actual harm suffered).

Plaintiff, however, argued in favor of certification on numerous bases, including the fact that the alleged violations here were secret, class members did not know their telephone calls were being violated, and as a result, a class action was the only possible manner (e.g. it was superior to other forms of adjudication) by which to litigate these claims.  Gaines Decl. at ¶ 24.

Significantly, the non-cash component of the settlement – extended or enhanced BMW Assist service – clearly has substantial value which exceeds the $50 cash option for many Class Members.  A rational consumer would generally choose $50 in cash over $50 in free service; therefore, the BMW Assist service – chosen by 40% of Class Members – should be valued for purposes of this settlement at or close to its $100 retail value.  Gaines Decl. at ¶ 33.

Accordingly, the value of the Settlement – in both monetary and non-monetary terms – justifies final approval of the Settlement.

    **e. Disclosure of Documents and Data Demonstrating the Strengths and Weaknesses of this Action was Completed Prior to Entering into the Settlement**

The extent of discovery that has been completed and the stage of the litigation

are factors that courts consider in determining the fairness of a settlement.  *See Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794, 1801 (1996); *see also Clark v. American Residential Services, LLC*, 175 Cal.App.4th 785 (2009).   This Settlement was entered into just after the filing of a class certification motion which would be dispositive of the class claims.   The Parties exchanged substantial discovery in anticipation of this motion – including multiple depositions, interrogatories and requests for admission, and thousands of documents.  The Parties exchanged further informal data in connection with their mediations and subsequent negotiations.  The Parties also apprised each other of their respective factual contentions, legal theories, and defenses.  The Parties negotiated the proposed Settlement with ample knowledge of the strengths and weaknesses of their case.  Gaines Decl. at ¶ 24.

The Parties engaged in extensive good-faith, arms-length negotiations, including multiple mediation sessions conducted before experienced mediators and subsequent extended settlement discussions that stretched over several months.  *Id.* The fact that this Settlement was negotiated at arms-length is inescapable.

### f.      The Experience and Views of Counsel Favor Final Approval

The endorsement of qualified and well-informed counsel of the settlement as fair is entitled to significant weight.  *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).  The attorneys representing Plaintiff and the Class have nearly a century of collective litigation experience, much of which has been devoted to consumer and employment cases in the class action context.  *See* Gaines Decl. at ¶¶ 2-5; Declaration of Kenneth S. Gaines at ¶¶ 2-5; Declaration of Alex P. Katofsky at ¶¶ 2-5; Declaration of Stephen H. Krumm at ¶¶ 2-4.

Class Counsel support the Settlement as fair, adequate, reasonable, and in the best interests of the Settlement Class as a whole.   Class Counsel believe this Settlement to be an excellent result for Settlement Class Members.  *See* Gaines Decl. at ¶ 25.

g.      **The Presence of a Governmental Participant**

There is no governmental participant here; this factor does not apply.   As noted in section V.D. below, no attorney general made any comment or objection to the Settlement.

h.      **Class Members' Positive Reaction to the Settlement Favors Final Approval**

Finally, and perhaps most importantly, courts examine the reaction of Class Members to determine if a settlement that directly affects their interests should be approved as fair, adequate, and reasonable.   4,147 Class Members have filed accepted claims and 2,829 Class Members have submitted a subscription agreement addendum.  *See* Sherwood Decl. at ¶ 12.  Only 19 Class Members have requested exclusion from the Settlement.  Sherwood Decl. at ¶ 13.  Not one Class Member has objected to any of the Settlement terms.  Sherwood Decl. at ¶ 14.

The Court should construe the overwhelming non-opposition to and participation in the Settlement as strong indicators of Class Members' support for the Settlement as fair, adequate, and reasonable.  The participation rate here is nearly 16% — a substantial number for a consumer class action, and simply remarkable for the type of claims alleged (based on Class Counsel's experience).  Gaines Decl. at ¶ 19; Sherwood Decl. at ¶ 12.

While the Court found the settlement consideration to be tentatively appropriate at the preliminary approval stage, the percentage of participating class members opting for extended or enhanced BMW Assist service supports the Parties' position that this element of the settlement consideration represents real and substantial value for class members.  About 40% of participating Class Members have elected to receive the service benefit instead of $50 in cash.  Class member support for the service benefit offered further evidences its real value and their positive reaction to the Settlement.

\\

**C.      Final Class Certification is Appropriate**

Before a court evaluates a settlement under Federal Rule of Civil Procedure 23(e), it must determine that the settlement class satisfies the requirements enumerated under Rule 23(a) and at least one of the requirements in Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).  The proposed Settlement Class meets all of the requirements of certification for settlement purposes.

**1.      FRCP 23(a) Requirements For Settlement Class Certification Are Met**

Rule 23(a) provides the factors that the Court looks to for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23.  These elements are satisfied here.

**a.  Numerosity**

If the class is sufficiently large that joinder of all members is impractical or that individual joinder is impractical, the numerosity requirement is met.  *See Cox v. American Cast Iron Pipe*, 784 F.2d 1546, 1557 (11th Cir. 1986).  The class contains approximately 43,000 members.  Joinder of individual claims is impractical here and the numerosity requirement is satisfied.  Gaines Decl. at ¶ 40.

**b.  Commonality**

The commonality requirement of Rule 23(a) is met if there are common questions of fact and law among the class.  *Hanlon*, *supra*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class")*; see also Dunk*, *supra*, 48 Cal.App.4th at 1806-1807 (upholding the propriety of a nationwide settlement class with one class representative, despite objector's

assertions that "different laws in various states defeat the commonality of law requirement.").

Hanlon, *supra,* 150 F.3d at 1019, explains that to demonstrate commonality, not all questions of fact and law need be the same.  The existence of shared legal issues, even with divergent factual predicates or a common core of salient facts coupled with disparate legal remedies, will satisfy the commonality requirement.  *Id.*  Thus, although members of the proposed class may possess different avenues of redress, if their claims stem from the same source, then the commonality factor is satisfied.

Here, all the Class Members' claims stem from identical conduct and are based on the alleged violation of the same state laws.  Commonality is therefore satisfied. Gaines Decl. at ¶ 41.

### c.  Typicality

Typicality is met if the Named Plaintiff's claims are typical of the class, though "they need not be substantially identical." *Hanlon*, *supra*, 150 F.3d at 1020.  In *Gen. Tel. Co. of the SW v. Falcon*, 457 U.S. 147, n. 13, 102 S. Ct. 2364, n. 13 (1982), the U.S. Supreme Court said:

> The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence.  Those requirements therefore also tend to merge with the adequacy of representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

The Court in *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) opined:

> The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class….Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought….The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct (citations and internal quotations omitted).

The Named Plaintiff's claims here are typical of those of all other Class Members. His claims are identical to those being brought on behalf of each other class member – based on the same factual predicates, the same allegedly unlawful conduct by Defendants, and based upon the same underlying legal authority which will be determinative of Defendants' liability. Plaintiff submits that, for settlement purposes, the typicality element is satisfied here. Gaines Decl. at ¶ 42.

### d. Adequacy of Representation

Rule 23(a)(4) requires that the Named Plaintiff and Class Counsel fairly and adequately represent and protect the interests of the class. If the Named Plaintiff and Class Counsel have no interests adverse to the interests of the proposed class members and are committed to vigorously prosecuting the case on behalf of the class, then the adequacy requirement is met. *Hanlon*, *supra*, 150 F.3d at 1020; *see also Griffin v. Carlin*, 755 F.2d 1516 (11th Cir. 1985).

Over the course of nearly two years, the Named Plaintiff and Class Counsel have expended approximately 865 hours in furtherance of the Settlement Class' interests. Both Mr. Skuro and Class Counsel have satisfied their fiduciary obligations

1    to the Class in aggressively litigating this case, then effectively negotiating a fair

2    compromise of the claims alleged.  Gaines Decl. at ¶¶ 43-44.

3          Mr. Skuro is requesting a modest service payment – $10,000, for his significant

4    time and efforts assisting Class Counsel with factual issues surrounding the case,

5    including his participation in the discovery phase and settlement process.   This

6    potential award represents about 0.2% of the value of the constructive common fund,

7    and therefore does not constitute a sufficient conflict of interest to foreclose fulfilling

8    the adequacy requirement.  *See* Stip. at ¶ IX.C; Gaines Decl. at ¶ 43.

9          Finally, based on their reputation, education, experience and success in similar

10   cases, Class Counsel, are competent and qualified to represent the Class.  *See* Gaines

11   Decl. at ¶¶ 2-5; Declaration of Kenneth S. Gaines at ¶¶ 2-5; Declaration of Alex P.

12   Katofsky at ¶¶ 2-5; Declaration of Stephen H. Krumm at ¶¶ 2-4;

13              **2.      FRCP 23(b)(3) Requirements for Class Certification are Met**

14         The Settlement Class also meets the requirements of Rule 23(b)(3) for

15   settlement purposes because: 1) common questions predominate over questions that

16   affect individual members; and 2) class resolution is superior to other available

17   methods of adjudication.  When assessing predominance and superiority, the Court

18   may consider that the class will be certified for settlement purposes only.  *Amchem*

19   *Prods., Inc. v. Windsor*, 521 U.S. 591, 618-20 (1997).  A showing of manageability at

20   trial is unnecessary; the dispositive inquiry at this stage is "whether the proposed

21   classes are sufficiently cohesive to warrant adjudication by representation."  *Id.* at

22   618-20, 623; *see also Hanlon*, *supra*, 150 F.3d at 1022.

23                     **a.      Predominance**

24         In analyzing predominance, as with commonality, "[i]t is not necessary that all

25   questions of fact or law be common, but only that some questions are common and

26   that they predominate over individual questions." *Cox*, *supra*, 784 F.2d at 1557.  The

27   claims of the Settlement Class are sufficiently cohesive; all Settlement Class

28

Members share a common nucleus of facts and potential legal remedies.  As a result, common questions of law and fact predominate.  Gaines Decl. at ¶ 45.

### b.      Superiority

Particularly in the settlement context, class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.  *See Hanlon*, *supra*, 150 F.3d at 1023.   The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Id.*  Here, as in *Hanlon*, the alternative method of resolution is individual claims for relatively small amounts of damages, proving uneconomical for potential plaintiffs because the cost of litigation dwarfs potential recovery. *Id.*

Perhaps the most persuasive argument in favor of the superiority of class treatment here is the surreptitiousness of the alleged violations by Defendants; were a class not certified, many (if not all) Class Members would not bring claims for the violations alleged, because few (if any) know their calls were recorded: Defendants' alleged unlawful conduct, by its very nature, is secret in nature.  As a result, class treatment is a superior method for adjudicating these claims, and a class action is the preferred method of resolution.  Gaines Decl. at ¶ 46.

### D.      Defendants Have Provided Notice to the Attorney Generals Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715

Because this case is before this Court under the Class Action Fairness Act, 28 U.S.C. § 1332(d), Defendants are required to notify "appropriate Federal and State officials" of the Settlement.  28 U.S.C. § 1715.

Defendants, via the claims administrator, notified the required officials on February 1, 2012.  Markham Decl. at ¶ 4; Gaines Decl. at ¶ 70, Ex. E.

28 U.S.C. § 1715(d) provides that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice…." 28 U.S.C. § 1715(d).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     More than 90 days have passed since notice was provided and the Parties have received no objections (or any other response) from any State or Federal officials. Markham Decl. at ¶ 4; Gaines Decl. at ¶ 71.  As such, the Settlement may be finally approved by the Court.

## VI.   **CONCLUSION**

     For all the foregoing reasons, Plaintiff requests that the Court grant final approval of the Settlement and approve distribution of the Settlement funds as set forth in the Stipulation.

DATED:  July 20, 2012          Respectfully submitted,

                            GAINES & GAINES,
                            A Professional Law Corporation

                        By:   /s/  Kenneth S. Gaines
                              KENNETH S. GAINES
                              DANIEL F. GAINES
                              ALEX P. KATOFSKY
                              Attorneys for Plaintiff SEAN SKURO
                              and Class Counsel

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT